**The ENGINEERS' CLUB OF DAYTON,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. No. 1626.

United States District Court
S. D. Ohio, W. D.
April 1, 1955.

Smith, Schnacke & Compton, Dayton, Ohio, for plaintiff.

Hugh K. Martin, U. S. Atty., Columbus, Ohio, A. Barr Comstock, Dept. of Justice, Washington, D. C., for defendant.

CECIL, District Judge.

This action is brought by the plaintiff, The Engineers' Club of Dayton against the United States as defendant, to recover from it the sum of $27,848.84, with interest, which it alleges to be due by reason of collection of taxes illegally upon the fees and dues of its members.

The action is brought by virtue of Section 1346(a) (1) of Title 28 U.S.C.A. This statute confers jurisdiction upon this Court in cases where the claim does not exceed $10,000, or in cases where the claim exceeds $10,000 and the Collector of Internal Revenue by whom such tax was collected is not in office as Collector of Internal Revenue when such action is commenced. It is alleged in the complaint that the Collector of Internal Revenue by whom such taxes were collected, was not in office at the time of the filing of the complaint.

The defendant admits the collection of the tax, but denies that it was illegally collected.

The case was tried and submitted to the Court upon the pleadings, an agreed statement of facts, oral testimony and briefs of counsel.

The Section of the statute under which the collection was made is 1710 of Title 26 U.S.C.A. It provides that the tax shall be paid by the person paying the dues or fees, and its pertinent parts are as follows:

"(a) * * * (1) Dues or membership fees. A tax equivalent to 11 per centum of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

"(2) Initiation fees. A tax equivalent to 11 per centum of any amount

paid as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $10 per year."

This statute is amplified by the Commissioner of Internal Revenue in Section 101.25 of Regulation 43, as follows:

"Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Code, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business."

"The test of taxability is not whether a club has any social features at all, but whether or not such activities, viewed, of course, in the light of all the circumstances of its existence including the declared purpose of the organization as shown by its constitution and by-laws, if their provisions are enforced, are what in fact provide the real reason for its existence and enable it to secure members and retain them. Another way to put the problem is 'whether the social features of the club involved are merely incidental or whether, on the other hand, they are a material purpose of the organization.'" Tidwell v. Anderson, 2 Cir., 72 F.2d 684, 687.

The alternative test is quoted by the Court from Union League Club of Chicago v. United States, Ct.Cl., 4 F.Supp. 929.

The essential facts in the case are not in dispute and are set forth in an agreed statement of facts prepared by counsel for both sides. These agreed facts are amplified to some extent by oral testimony. Counsel have recited the facts in their briefs and the Court will not repeat them here. Counsel will prepare a specific findings of fact in accordance with this opinion and as will later be indicated by the Court.

While the facts are not in dispute, there is a sharp conflict in their interpretation. There is a slight tendency on both sides to exaggerate, or at least, over-emphasize the effect of the existing facts. In connection with the home-night programs, it seems to the Court that the witness for the plaintiff is inclined to characterize as educational, programs which seem obviously to be for entertainment purposes only. The Court realizes in this connection, that it is difficult to determine where education stops and entertainment begins.

The enthusiasm of the writer of the Government's brief is even more marked. Endeavoring to sum up in a final paragraph, all of the facts in the case, counsel for the Government, on page 3 of their supplemental brief, state: "In brief, it is the Government's position that any club which in one year serves 71,527 meals and which restaurant activity is complemented by Home-Night programs, Monte Carlo Nights, Billiard Tables, Club Smokers, Dances, Annual Parties and private dining rooms where 7,690 meals were served during the year ending March 31, 1950, is a social club."

This puts an emphasis upon the facts all out of proportion to the evidence as shown by the record. Virtually all of these things existed in the Cosmos Club and it was held by the Court of Claims that the club was not a social one. Cosmos Club v. United States, 42 F.2d 321, 70 Ct.Cl. 366.

On page 4 of the defendant's brief it is stated: "The billiard room consists of five *large* billiard tables." (Emphasis added.) The Court thought that billiard tables were of a standard size.

On page 5 of defendant's brief it is stated: "the consumption of alcoholic beverages is confined to the club smoker, the annual business meeting and dances." This would seem to infer that liquor is consumed all out of proportion to the

facts as they exist. The evidence shows that there is no bar, that beer is served at seven smokers a year, at the annual business meeting and that participants may bring their own liquor at the club's four or five dances per year.

Again on page 6, it is stated "In addition, Monte Carlo parties are held. *These parties involve games of chance.*" (Emphasis added.) If it is intended by these statements to infer that gambling is conducted in the Engineers' Club of Dayton, the inference appears to be entirely unwarranted by the evidence. The evidence was that on the nights of these games, the participants were given a quantity of fictitious money and that a prize was awarded to the one who could accumulate the largest amount of such money.

It is the duty of the Court to dispassionately appraise and interpret the facts in the light of all of the circumstances of the case.

Most of the cases cited are reported in Federal Supplement. There seems to be a dearth of decisions by the United States Court of Appeals. Since most of the cases turn on questions of fact and the Court of Appeals does not reverse on questions of fact, except where the finding of the trial court is clearly erroneous, it can be easily understood why there are not more decisions by the Court of Appeals.

As was stated by the Court in Turks Head Club v. Broderick, 1 Cir., 166 F.2d 877, at page 882: "We shall not undertake an extensive review of the decided cases—which are legion—involving application of this tax on club dues; the cases so largely turn on their particular facts."

The Turks Head case, supra, is a fairly recent case, having been decided in March, 1948. Two questions were presented in this case. (1) Could the club recover the taxes paid by its members when the club had not been properly authorized to do so as the agent of the members? (2) Was the club, in fact, a social club? The trial court ignored the first question and held that the club was a social one. The Court of Appeals decided the first question adversely to the Club and affirmed the trial court on the question of taxability. In affirming the trial court on taxability, it was limited to a review of the facts as found by the trial judge. In order to reverse, it would have been required to find that the decision of the trial judge on the facts was clearly erroneous. Quoting from the opinion, it is stated: "The purposes of the club as expressed in its charter are the 'maintenance of club rooms for the use of its members, the promotion of the business interests of its members, the advancement of the mercantile and industrial life of the City of Providence and vicinity, and the encouragement of social intercourse.'" The finding on the facts was that "the encouragement of social intercourse" was the club's dominant purpose and that "the promotion of the business interests of its members" was secondary and incidental. In most of the cases where taxability is sustained, the clubs involved have no predominant business or professional objectives.

The essential question is whether or not the club has a predominant purpose and what that purpose is. The purpose of the Engineers' Club of Dayton is stated as "the advancement of engineering through furnishing facilities for the educational improvement of its members." Section 2, Constitution, Engineers' Club of Dayton.

In 1941, the articles of incorporation were amended so as to change the stated purpose from "the advancement of engineering, the encouragement of social intercourse, and the professional improvement of its members" to "the advancement of engineering through furnishing facilities for the educational improvement of its members."

It is claimed by counsel for the defendant that the purpose of a club must be based upon what its activities show it in fact to be rather than on what it says it is by its articles of incorporation and constitution. The Court is in agree-

ment with this contention. No great significance can be attached to the fact that the purpose clause was amended in the articles of incorporation. Its predominant purpose can as well be the "advancement of engineering" when its articles of incorporation use the phrase "the encouragement of social intercourse" as it can be a social club when its articles of incorporation say nothing about "social intercourse."

The Court is of the opinion that the change in the articles of incorporation conformed to the actual purpose, function and uses of the club.

Counsel for the defendant argue that the classification for affiliated members, detracts from the purpose of the club to advance engineering through furnishing facilities for the educational improvement of its members. It is pointed out that a minister or a painter may become an affiliated member. The facts show that there are only 22 or 23 affiliated members out of the total of nearly a thousand members. These affiliated members must qualify as follows: "An affiliated member shall be a person not less than 25 years of age who, by scientific or practical experience or by reason of being associated with industry cooperates with engineers, or one who has given unusual service to the community or has attained acknowledged eminence in commerce, industry or a profession." Section 6, Constitution, Engineers' Club of Dayton.

There is no evidence that this provision of the constitution has not been followed in selecting affiliated members. The constitution limits this number of affiliated members to 30, unless increased by the Board of Governors. As long as this provision of the constitution is followed, there can be no great influx of members unrelated to the engineering field. The professional members are not apt to be crowded out by persons who have "attained acknowledged eminence in commerce, industry or a profession."

One cannot spend most of one's life in a community and not know something of the ideals and purposes of such outstanding citizens as Col. E. A. Deeds and Mr. Charles F. Kettering. The evidence shows that they were the benefactors in donating the land and building to the club. It is inconceivable that these men, with their well-known interest in the advancement of engineering, would donate such a building for purely social purposes. Of course, the club has been in operation for about forty years and its purposes could be widely changed now from those of its founders. The Court is of the opinion, however, that the evidence does not show such to be the case.

The principal activities of the Engineers' Club relied upon by counsel for the defendant to establish it as a social club, are the operation of a dining room, home-night programs, smokers, dances and billiard tables. The operation of a dining room will not in and of itself make for taxability as a social club. Bankers Club of America, Inc., v. the United States, 37 F.2d 982, 69 Ct.Cl. 121. The dining room, according to the evidence, operates at a loss and does not carry the club as suggested by counsel for defendant in their brief. The home-night programs are conducted once a month from October through April. The smokers are held monthly during the same period of time. Dances are held four or five times a year. The game of billiards is indulged in by only a few members, and so far as time is concerned, only during the noon hour.

Considering all of the evidence in this case, the Court is of the opinion that the social activities of the club in point of time consumed, cost and importance to the general club program, are not sufficient to make the predominant purpose of the club a social one. The club's membership of engineers, its focal point for numerous engineering societies, its facilities and technical and educational program, leave no doubt in the mind of the Court that its central and dominating purpose is the advancement of engineering. All so-called social features are merely incidental and secondary to the purpose of the organiza-

tion. It does not appear that persons would be induced to join the club for these social privileges.

The Court, therefore, finds in favor of the plaintiff and that it is entitled to recover the amount of taxes paid as set forth in its complaint, together with interest, in accordance with law.

Counsel for the plaintiff will prepare and submit to the Court for its approval a specific findings of fact and conclusions of law.