**UNITED STATES of America,**
**Appellant,**

v.

**Robert J. McINTYRE and Clare**
**McIntyre, Appellees.**

**No. 7535.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1958.

Decided March 27, 1958.

David O. Walter, Attorney, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Leon H. A. Pierson, U. S. Atty., and John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., on brief) for appellant.

Ralph R. Sachs, Washington, D. C., for appellees.

Before SOBELOFF and HAYNSWORTH, Circuit Judges, and STANLEY, District Judge.

HAYNSWORTH, Circuit Judge.

This is an appeal from a judgment ordering the refund of excise taxes paid with respect to a "life membership" fee collected by the Twinbrook Swimming Pool Corporation. The District Court held that, while the "life membership" fee was an "initiation fee" within the meaning of § 4241 (26 U.S.C.A. § 4241), the Twinbrook Swimming Pool Corporation was not a "social, athletic, or sporting club or organization," and, hence that no excise tax was due or collectible. McIntyre v. United States, D.C. Md., 151 F.Supp. 388.

Residents of Twinbrook, a residential section in Rockville, Maryland, near the District of Columbia, had become concerned over the lack of adequate recreational facilities for their children. They decided to construct and operate a swimming pool. With a commendable sense of community responsibility, it was planned from the outset that the pool, upon occasion, would be made available for use by certain municipal agencies and charitable organizations working with handicapped and underprivileged children in the Rockville area.

A nonstock corporation, Twinbrook Swimming Pool Corporation, was organized under the laws of Maryland for the purpose of providing "a swimming pool or pools and other facilities to its members." The charter leaves to the By-Laws the qualification of members and restrictions upon the transfer of memberships, but limits memberships to one class, known as "life membership."

The By-Laws limit the membership to 600 members, each of whom must be a bona fide resident of defined residential sections of Rockville or the owner of a house or proprietor of a business within the defined areas. Transfer of memberships, subject to certain restrictions and procedures, is authorized by the By-Laws, and expulsion of members and the refund of the membership fee to an expelled member is contemplated. Except as noted below, use of the facilities of the corporation is limited to such of the "life members" as shall have currently paid annual dues of $10., members of their households and their guests. Employees of the household, except a governess, tutor or companion, are excluded from use of the facilities of the corporation. No one, who lives within those sections of Rockville whose residents are eligible for membership, may come as a guest, and the Board of Directors is authorized to further restrict, regulate and limit guest privileges. In exercising its power over use of the guest privilege, the Board is instructed to "consider the paramount interest of the members and their immediate families in their enjoyment of the Corporation's facilities and shall also consider the importance of reasonable guest privileges for members and occupants of their households * *."

The 600 members were soon obtained, and the corporation proceeded to construct a large pool and dressing rooms, with parking facilities, upon a tract of land, containing 5.641 acres, which it had acquired for the purpose.

The Board of Directors was also authorized by the By-Laws to permit others to use the pool. Pursuant to this authority, the Board, in the first full year of operation, made the pool available on certain days and at specified times to children receiving treatment at the Crippled Children's Rehabilitation Center, to children sponsored by the City Recreation Center and, during a two-week period, to boys attending a camp under the sponsorship of the American Legion. These special admissions accounted for an aggregate of 2,000 admissions out of an aggregate total of 54,000 admissions during the season.

The excise tax is laid upon dues, membership and initiation fees and assessments paid to "any social, athletic, or sporting club or organization." 26 U.S.C.A. § 4241. The taxpayers, characterizing this pool as a "recreational facility," seek to draw a distinction between things recreational and things social or athletic. Because the pool is enjoyed by adults and their children in a friendly and informal atmosphere, the corporation is said to be unlike those social clubs which sponsor or encourage more formal social events and social intercourse among adults. Because there had been no organized contests in diving or swimming, the corporation is said to be unlike those athletic clubs which provide facilities for competitive sports.

■ Doubtless, many individuals find recreation in things done alone, things which are neither social nor athletic, but most social events and occasions and most athletics are recreation for those who enjoy them. A social club does not fall without the statutory definition because it is enjoyed by children as well as by adults, nor because it affords facilities for events which are happy, friendly, informal and comparatively inexpensive. In short, our inquiry is not answered by a finding that this is a "recreational facility"; conceding that it is, we must determine whether it is a social or athletic organization within the meaning of the statute.

The documents and testimony offered by the taxpayers contain the following language as descriptive of the organization and the use of its facilities:

"* * * the total picture at the pool is that of a great big family gathering as may be distinguished by (sic) the atmosphere found in most country clubs, with their air of exclusion and removal."

"* * * 'recreation' means healthful activity that contributes to health and well being; and, in my mind, at least, it is just as much social, emotional, and mental, as it is physical; and I think that what we would try to establish, here, was a recreational facility, in that sense."

\*    \*    \*    \*    \*    \*

"There is no question that there is a great deal of social activity, communication between people. I think it is generally conceded that one place to meet your friends and get information, and so on, is the community pool; and I dare say that there have been informal committee meetings on other subjects held on the banks of the pool, so to speak."

"* * * It looks to me just like plain social splashing in the water."

"* * * In this case, you are meeting with friends, much conversation and visiting goes on in the general area, and it is altogether different from a public pool, where I had to stand on the bank and kept my eye on my youngster and bring him out at the proper time, and so forth, where it is all strangers. * * *"

We have, then, an organization which is exclusive in the sense that it is quite unlike a public pool; its membership is limited in number and restricted as to

eligibility to persons having a presence in carefully defined sections of a larger community, and, while guest privileges are conditionally allowed, a person residing in the geographic area of eligibility, if not privileged to come as a member, may not be invited as a guest. It is social in its use during the season as a social center of a suburban community where, by prearrangement and happenstance, members, their families and guests, meet their friends and neighbors, where conversation flows and "informal committee meetings" are held, until the whole takes on the appearance "of a great big family gathering." Formal society is hardly more social than the friendly companionship and mutuality of enjoyment that are shown to be characteristic of the use of this pool.

█ We have been referred to no case in which the court was called upon to decide whether an organization comparable to this was "social" within the meaning of the statute. In Town Club of St. Louis v. United States, 8 Cir., 68 F.2d 620, 623, reference was made to a swimming pool as an "attractive social feature," and in United States v. Anderson, 7 Cir., 108 F.2d 475, use by the members and their guests of the club's pool on Sundays was described as a "social event." It is the use, not the existence of the facility, however, which determines the result. There are many pools, the use of which, while perhaps athletic, is not social; there are others which, because of the character of the use and the relations between the people who enjoy it, are social facilities. We are constrained to hold, on the undisputed facts in this case, that the organization which operated and maintained this pool

was a social one within the meaning of the statute. Indeed, the record shows its social aspect to be its outstanding feature.[1]

█ The absence of other facilities for social use does not affect the conclusion. An organization serving the social purposes of its members need not possess every facility of every other social organization to come within the reach of the statute. Turks Head Club v. Broderick, 1 Cir., 166 F.2d 877; Duquesne Club v. Bell, 3 Cir., 127 F.2d 363, 143 A.L.R. 1377; Downtown Club of Dallas v. United States, 5 Cir., 240 F.2d 159.

It is apparent that what seems to be the basic misconception of the taxpayer is the product of an elevation of the worthy motives of the promoters of the pool to an assumed status independent of the social purposes of the organization. The taxpayers point to the fact that the matter of juvenile delinquency was discussed at the early meetings, and they stress the fact that the children of members, rather than the adult members in their separate persons, were intended to be the primary beneficiaries of the operation of the pool.

██ It is quite true that an organization having a predominant purpose which is neither social, athletic nor sporting is not within the statutory definition even though it has some social features or, incidentally, provides the occasion for social contacts. The members of a professional society need not be unfriendly, nor the supporters of an eleemosynary institution unacquainted, in order to insulate their dues from the tax. Squantum Association v. Page, D. C.R.I., 7 F.Supp. 815, affirmed 1 Cir.,

---

1. Swimming and diving are said to be excellent forms of exercise. Supposedly, the members, using the pool, were interested in the conditioning of their own bodies and the development of those of their children as well as in the extension and enjoyment of their relations, and those of their children, with friends. The fact that formal competitions were not promoted does not suggest that in-

formal contests of skill and speed were infrequent or that use of the pool, for other reason, was not athletic. This phase of the case was not fully developed in the testimony, however, and, in view of our conclusion that it is a social organization, we need not consider whether it is also an athletic organization within the meaning of the statute.

77 F.2d 918; Engineers' Club of Dayton v. United States, D.C.S.D.Ohio, 133 F.Supp. 72; Rockefeller Center Luncheon Club, Inc., v. Johnson, D.C.S.D.N.Y., 131 F.Supp. 703; Washington Club v. United States, 49 F.2d 656, 69 Ct.Cl. 621; Builders' Club of Chicago v. United States, 58 F.2d 503, 74 Ct.Cl. 595; Block Hall, Inc., v. United States, 57 F.2d 918, 74 Ct.Cl. 600. Parental care of the child is a natural obligation, however; its discharge, in no sense a charity. The members here, in the formative period and in the operation of the pool, were principally concerned with their own children, not with the children of less fortunate families. If the members of the organization were insensitive to the needs of their children and neglectful of them, it can be imagined that some, or many, of the children would become delinquent, but one who recognizes and performs his parental obligations only indirectly and incidentally assists in the fight against juvenile delinquency. The discharge of a natural and legal obligation, though it contributes to the stability and welfare of society, is not an act of charity. A parent who provides well for the child and bountifully serves the child's need for wholesome recreation, for social adjustment and the development of his character and capabilities may earn the plaudits of his fellows, but he serves himself. At least for tax purposes, such activities are indistinguishable from like activities in aid of the similar needs of the parents. Expenditures for food, clothing and shelter for one's child are not deductible for income tax purposes, but donations to an orphans' home are.

Dues paid to a social club of which the child is a member, whether paid by the child or the parent, are taxable under the statute. No logical distinction is achieved if the parents, too, are members of the club or if the child is privileged to enjoy its facilities only by virtue of the membership of the parent. In the application of this taxing statute, the interest of the members in their children, however praiseworthy, is not a separable purpose which may be said to so subordinate the social features of the organization as to make them merely incidental. On the contrary, the primary purpose was the provision of facilities to serve the social and athletic needs of the member families. That the facility serves the needs of their children to a larger extent than it directly serves the same needs of the parents is a circumstance, but not a distinction affecting taxability of initiation fees and dues.

The taxpayers contend that the payments for "life memberships" should be taxable only as such, but the District Court very properly concluded that, if taxable at all, they should be taxed as initiation fees. The "life memberships" were in no sense a commutation of future dues, for every "life member" was permitted the use of the facilities of the organization only if he was current in the payment of the same annual dues payable by every other member in good standing. There is, in fact, no other class of membership. With certain restrictions, the memberships are transferable, and no new member may be elected except upon acquisition of a certificate of "life membership." Except in name, the certificates have all of the attributes of a share of stock, or other security, the purchase and ownership of which is required as a condition of membership. It is the substance of the requirement, not the name the taxpayers chose to give such a security, which determines the method of computing this excise tax and the time of its accrual. See 26 U.S.C.A. § 4242(b).

Concluding, as we do, that the tax on the cost of these "life memberships" was properly collected as a tax upon initiation fees paid to a social organization, the case will be reversed and remanded with direction to enter judgment for the United States.

Reversed.