586 A.2d 1281

**Harry R. BELMAN**

v.

**STATE of Maryland.**

**No. 51, Sept. Term, 1990.**

Court of Appeals of Maryland.

March 8, 1991.

208

Michael I. Gordon (Gordon & Heneson, P.A., on brief), Baltimore, for petitioner.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (ret.), Specially Assigned.

CHASANOW, Judge.

The question presented in the instant case is whether a person who purchases a house in an historic district without knowing that the house does not conform to the district's preservation requirements and who fails to make repairs to bring the house into compliance can be subject to criminal sanctions under the Baltimore City Code, Article 1, § 40(w) (1976, 1983 Repl. Vol.).

In 1979, Ridgeley's Delight Historic District was established by a Baltimore City ordinance. The house located at

621 South Freemont Avenue is in the historic district. In the early 1980's, a previous structure standing on that lot was torn down and a prefabricated house was erected by the Land Development Corporation. Angelo Rose was president of the corporation. The plans for the prefab house were approved by the Commission for Historical and Architectural Preservations (CHAP) subject to several conditions necessary to bring the house into compliance with CHAP requirements. Two of the requirements were that Mr. Rose, on behalf of his corporation, agree to install a glass transom over the front door and construct a wood cornice in the west facade of the property. Following the agreement between Mr. Rose and CHAP, on November 21, 1983, CHAP granted a Notice to Proceed and the necessary building permits were issued. The house was erected; however, the corporation did not install the transom or construct the cornice.

As the house neared completion, the builder agreed with a local radio station to offer the house as a prize in a radio promotion. Eddie Wesson was the lucky winner of the house. A year or more later, Wesson obtained a use and occupancy permit and shortly thereafter sold the house to Petitioner Harry R. Belman.

Prior to purchasing the property, Belman had a title search performed, was assured that there was a use and occupancy permit, and obtained a lien report which included a certification that there were no outstanding violation notices from the City of Baltimore. Rose's agreement with CHAP to install the transom and cornice was not recorded among the land records. Belman had no actual knowledge of Rose's agreement to install the transom and to construct the cornice, so it was a surprise to him when, shortly after purchasing the house, he was contacted by CHAP representatives and told that the house was not in compliance with historic district requirements. At the request of CHAP, Belman did some work on the house to comply with some of the historic district requirements, but he refused to install the transom or to construct the cornice.

Apparently there were continuing efforts to have Mr. Belman bring the house into compliance and, when they failed, on August 22, 1989, four and one-half years after he purchased the property, Belman was charged with several criminal violations. The two offenses for which Belman was ultimately convicted were:

1. "[That he] failed to install glass transom above 1st floor front entrance door as approved by the Commission for Historical and Architectural Preservation from a revised design dated November 21, 1983. (glass transom is missing over door on 1st floor front)."

2. "[That] the following parts of the revised design have not been installed according to the Commission for Historical and Architectural Preservation's Notice to Proceed dated November 21, 1983, to wit: wooden cornice is missing from the 2nd floor—no approval from the Commission for Historical and Architectural Preservation to omit wood cornice."

Belman raises several contentions on appeal. He contends that his refusal to install the transom and to construct the cornice are not within the purview of the criminal statute. He also contends that the statute requires *mens rea* and that he had no notice of the violation. Finally, he contends that the city is estopped from asserting that CHAP standards have not been complied with since a use and occupancy permit was issued. He asserts that by issuing a permit, the city has certified that the property is ready for occupancy and that all general welfare standards, including CHAP standards have been satisfied. We need only address his first contention.

The Baltimore City Code, Article 1, § 40, subsections (a) through (w), establishes the Commission for Historical and Architectural Preservation. The act also provides in relevant part in subsection (q):

"Before any person or other legal entity commences any excavation, or the construction or erection of any building, fence, wall, or other structure of any kind, or com-

mences any reconstruction, alteration, or removal of any exterior architectural feature, or commences any change in the exterior color by painting or other means, or commences any demolition of any structures now or hereafter in any Historical and Architectural Preservation District, or commences any reconstruction, alteration, or removal of any exterior architectural feature, or commences any change in the exterior color by painting or other means, or commences any demolition of any structures now or hereafter appearing on the Landmark List or the Special List, such person or other legal entity shall submit an application for a permit to the Commissioner of Housing and Community Development, and no work contemplated herein shall commence before the issuance of such permit."

Section 40(w) provides for criminal penalties. It states:

"Whoever excavates, constructs or erects, reconstructs, alters, removes any exterior architectural feature, changes the exterior color, or demolishes any buildings or structures, now or hereafter, in any Historical and Architectural Preservation District, or any building on the Landmark List or on the Special List, in violation of the provisions of this section, shall be punished by a fine of not less than Fifty Dollars ($50) and not more than Five Hundred Dollars ($500) and/or imprisonment for not more than twelve (12) months."

 This Court has repeatedly stated that the preservation of architecturally or historically significant areas is a valid exercise of the governmental power. *See, e.g., Donnelly Adv. Corp. v. City of Balto.*, 279 Md. 660, 671, 370 A.2d 1127, 1133 (1977); *City of Baltimore v. Mano Swartz*, 268 Md. 79, 91, 299 A.2d 828, 835 (1973).

In *Faulkner v. Town of Chestertown*, 290 Md. 214, 428 A.2d 879 (1981), we interpreted an historical preservation ordinance that uses language very similar to the Baltimore City ordinance. We said:

"We see no need to engage in a review of cases concerning constitutionality of statutes. To us the Act and ordinance are clear and capable of understanding by people of ordinary intelligence, notwithstanding the contention by the Faulkners that many people do not know what it means. The first clause in its reference to 'construction, alteration, repair, moving or demolition' is simply an attempt to be all inclusive. It must be read with the second clause which states that 'if any changes are involved which would affect the exterior appearance of a structure visible or intended to be visible from an adjacent public way in the districts,' then an application for permit must be filed. It may be that the first clause is susceptible of criticism for using too many words, just as lawyers have been criticized for writing 'grant and convey,' 'give, devise and bequeath,' and the like. In plain language what the ordinance and the Act are saying is that if one proposes to do anything to a building within a historic district which will involve changes to the exterior appearance of the structure visible from a street or alley in the district, then one must obtain a permit. That is so plain we see no reason why people of ordinary intelligence would be unable to comprehend the meaning of the Act and the ordinance."

*Id.* at 228, 428 A.2d at 885.

In *City of Annapolis v. Anne Arundel Co.*, 271 Md. 265, 316 A.2d 807 (1974), we discussed the purposes of historic preservation and the necessity of uniformity of application of the statutory mandates to accomplish these purposes:

"First of all, traditional zoning is primarily directed at the *use* of land, as well as the *density* and the *location* of buildings on the land. Historic area zoning, on the other hand, is not directed at any of these factors, but *only* at the *preservation* of the *exterior* of *buildings* having *historic or architectural merit....*

Secondly, to accomplish the primary purposes of historic area zoning, it is necessary that the exterior of the building having historic or architectural value be pre-

served against destruction or substantial impairment by *every one,* whether a private citizen or a governmental body. In short, the historically or architecturally valuable building is just as much lost by destruction by a public body as it would be by a private owner.... The General Assembly could well conclude that, to accomplish historic and architectural preservation, the jurisdiction of the Commission should extend to all owners be they private persons or governmental agencies. Otherwise, the primary purpose of the legislation would be frustrated." (Emphasis in original.)

*Id.* at 291–92, 316 A.2d at 821.

The State contends that to effectuate the purposes of historic preservation legislation "the law must apply to all acts or omissions by everyone that affect the exterior of buildings in a preservation district." Further, it contends that "the trial court held, the comprehensive language of the Baltimore ordinance mandates a continuing obligation of all CHAP area property owners to maintain their property in conformance with the preservation requirements of the area." We agree with the State that the ordinance is broad and comprehensive. Although the intent of the Act as a whole may be to apply to all acts or omissions by anyone that affect the exterior of buildings in the preservation district, the section that imposes criminal penalties is much more limited and only imposes criminal sanctions for specific acts or omissions.

Penal statutes must be construed and applied according to the intent of the legislative body without unwarranted severity or unjustifiable lenity. Where a statute is ambiguous and the legislative intent is in doubt, the courts are inclined toward the construction most favorable to the accused. *State v. Kennedy,* 320 Md. 749, 754, 580 A.2d 193, 195 (1990); *State v. Fleming,* 173 Md. 192, 196, 195 A. 392, 393 (1937).

The penal statute at issue is not ambiguous. It is quite clear that it applies to whoever "excavates, constructs

or erects, reconstructs, alters, removes any exterior architectural feature, changes the exterior color, or demolishes any buildings or structures." Belman did not excavate, construct, alter, change or do anything that brought him within the penal ordinance. The penalty provision does not apply to one who has neither committed a culpable act or omission nor aided and abetted in the culpable act or omission.

It is undisputed that when Belman purchased the subject property he had no notice that the structure had not been completed in accordance with the CHAP requirements. Whether his failure to install the transom and to construct the cornice, as agreed to by his predecessor in title, would subject Belman to civil sanctions is not before us. Rather, what we decide is that his inaction violated no provision of the criminal ordinance. Belman's refusal to comply with an agreement made by his predecessor in title, of which he had no knowledge at the time he purchased the house, is not one of the acts or omissions punishable by section 40(w). For this reason, Belman's criminal convictions must be reversed.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.