602 A.2d 1176

Lucille BALL

v.

UNITED PARCEL SERVICE, INC.

Misc. No. 11, Sept. Term, 1991.

Court of Appeals of Maryland.

March 11, 1992.

David M. Williams, Chestertown, for appellant.

Alan H. Kent (Schnader, Harrison, Segal & Lewis, on brief), Washington, D.C., for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

By ch. 721 of the Acts of 1972, codified as Maryland Code (1987 Repl.Vol.), Article 27, § 562A(a), the General Assembly of Maryland made it a criminal offense

"for any person, group or organization to engage in any act or conduct for the sole purpose of coercing or intimidating another person to contribute or donate any goods, materials, services, or moneys to any social, economic, or political association or organization."

Under subsection (c), persons violating the statute are subject to a fine not exceeding $100, or imprisonment for not more than ninety days, or both.[1]

The single question presented in this case, certified to us by the United States District Court for the District of Maryland,[2] is whether the United Way Fund is, within the contemplation of the statute, a "social, economic, or political association or organization."

I.

The case arose when Lucille Ball sued her employer, United Parcel Service, Inc. (UPS), in the Federal District Court, claiming that her employment was unlawfully terminated because she refused to comply with her employer's

---

1. Section 562A(b) provides that nothing in the statute "shall be deemed to prohibit any picketing assembly in connection with a [genuine] labor dispute."

2. *See* Maryland Code (1989 Repl.Vol.), § 12-601 through § 12-609 of the Courts and Judicial Proceedings Article and Maryland Rule 8-305.

directive that she donate part of her time and wages to the United Way Fund (the Fund). In her complaint, Ball contended that this directive violated the public policy of the State, as embodied in § 562A(a), because the Fund was a social or economic association or organization within the meaning of the statute. As a consequence, Ball contended that she was wrongfully discharged from her employment under *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), thereby making UPS subject to her claim for monetary damages. UPS contended that Ball's claim was not founded on a violation of the public policy of this State under *Adler* because the Fund was neither a social nor economic association nor organization within the ambit of the statute.

Deeming the matter before it to present a question of state law, the district court, in certifying the issue to us, outlined the relevant facts as follows:

"(3) On or about March 1, 1977, plaintiff was hired by defendant corporation as a part-time employee.

"(4) On or about March 1, 1984, plaintiff was promoted by defendant corporation to the position of 'supervisor.' It is undisputed that plaintiff's employment in the supervisory position was 'at will' employment as defined by Maryland law: plaintiff had no written contract with defendant corporation nor was her employment defined by a durational term.

"(5) Plaintiff alleges that on or about September 1, 1985, defendant corporation began to require that plaintiff and other employees donate a portion of their wages and "part of their time" to the United Way Fund.

"(6) From approximately September 1, 1985, until about October 1, 1986, plaintiff complied with defendant's alleged requirement that she pledge money and time to the United Way Fund.

"(7) On or about October 1, 1986, plaintiff refused to authorize defendant corporation to deduct any money from her paycheck for the purpose of making a donation to the United Way Fund.

"(8) On October 14, 1986, defendant corporation terminated plaintiff's employment.

"(9) Plaintiff alleges that her refusal to authorize personal contributions or to donate any of her time to the United Way Fund was the sole reason for her termination by defendant corporation."

## II.

Ball maintains that, by definition, a fund is an appropriation, deposit, or collection of money, or other resources, which is set apart for a specific objective. She claims that the United Way Fund necessarily functions as an economic organization in the collection, management, investment, and distribution of monies which it raises. She further contends that the Fund is a social organization because it is concerned with the welfare of human beings as members of society. This is consistent, she says, with the stated purpose of the United Fund of Central Maryland "to obtain and apportion funds to provide for the charitable, philanthropic and social agencies in the area served." According to Ball, it is clear from these definitions that the Fund is both an economic and social organization encompassed by the provisions of § 562A(a). She makes no contention that the Fund is a political organization.

UPS argues that the Fund is not a social or economic association or organization but rather is a charitable undertaking, not included within the provisions of § 562A(a).[3] Noting that § 562A(a) is a penal statute, UPS says that there is no basis to construe it more broadly than its plain language permits. Moreover, it argues that the legislature's silence as to charitable funds in § 562A(a) supports a narrow construction of the statute, which excludes contributions to charitable organizations. It also suggests that, in

---

**3.** UPS denies that it ever required any of its employees to make donations to the United Way Fund or that Ball was terminated for failing to make such donations. To the contrary, UPS states that Ball was properly terminated for cause.

any event, § 562A(a) is unconstitutionally vague and therefore void insofar as the undefined terms, "social" and "economic," are included in the statute.

### III.

■ In determining the questions before us, we turn to the time-honored canons of statutory construction, chief among which is the rule that, in seeking to ascertain the legislative intention, the beginning point is the language of the statute itself. *See Bacon v. State,* 322 Md. 140, 147, 586 A.2d 18 (1991); *In re Demetrius J.,* 321 Md. 468, 473, 583 A.2d 258 (1991); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–16, 525 A.2d 628 (1987). Thus, in achieving this result, we focus primarily on the words of the statute, which must ordinarily be given their natural and usual meaning in the context of the legislative goals. *State v. Bricker,* 321 Md. 86, 92, 581 A.2d 9 (1990); *Webb v. State,* 311 Md. 610, 618 n. 2, 536 A.2d 1161 (1988); *Tucker v. Firemen's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730 (1986). We have said that a statute is not vague "when the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning." *Eanes v. State,* 318 Md. 436, 460, 569 A.2d 604 (1990); *Bowers v. State,* 283 Md. 115, 125, 389 A.2d 341 (1978).

■ The parties agree, and we concur, that there is no relevant written legislative history which sheds light on the legislatively intended reach and application of § 562A(a). We therefore turn to the "usual and natural" meaning of the words used in the statute. *Webster's Third New International Dictionary* 2161–62 (1981) recites a lengthy and multi-faceted definition of the word "social." Its five main thrusts are:

"1: involving allies or confederates ... 2: marked by or passed in pleasant companionship with one's friends or associates ... 3: forming or having a tendency to form

cooperative and interdependent relationships with one's fellows ... 4: of or relating to human society ... 5: of, relating to, or based on rank or status in a particular society or community...."

The main concepts of the word "economic" are defined by the same dictionary, at 720, as follows:

"1 *usu. economical, archaic:* of or relating to a household or its management: of or relating to a divine dispensation or system of government 2 *usu. economical:* given to thrift: productive of saving: sparing in quality ... 3 a: of or relating to the science of economics ...: of, relating to the production, distribution, and consumption of commodities ... b: having practical or industrial significance, uses, or application ...: affecting or liable to affect material resources or welfare ... c: operated or produced on a profitable basis: producing an excess of returns over expenditures ...: capable of or liable to profitable exploitation."

In considering the application of the phrase in § 562A(a) "social [or] economic ... association or organization" to the United Way Fund, we note that the record extract before us does not set forth the purposes or charter of the Fund. The record does, however, contain Articles of Amendment and Restatement of the United Fund of Wicomico County, Inc. and the Articles of Incorporation of the United Fund of Central Maryland, Inc. While the relationship, if any, between these entities and the United Way Fund is not disclosed by the record, the parties appear to accept the premise that the Fund, like the other two entities, is a nonprofit organization which raises money for charitable purposes. It is, therefore, not unlike the United Fund of Central Maryland which, according to its charter, is organized and operated "exclusively for charitable and philanthropic purposes," raising funds "to assist with the operating budgets of such nonprofit organizations as the Corporation may from time to time desire to assist." In this regard, the Attorney General of Maryland has characterized the United Fund of Central Maryland as a "[f]ederated

fund-raising organization" under Code (1990 Repl.Vol.), Article 41, § 3–201(d) (*see* 62 Op.Att'y Gen. 155 (1977)), which is thereby defined as

> "a federation of independent charitable organizations which have voluntarily joined together, including but not limited to a united fund or community chest, for the purpose of raising and distributing money for and among themselves and where membership in the federation does not confer operating authority and control of the individual charitable organizations upon the federation."

Section 3–201(b)(1) defines a "[c]haritable organization" as "a benevolent, educational, philanthropic, humane, patriotic, religious, or eleemosynary organization [which] solicits or obtains contributions solicited from the public for charitable purposes."

As Ball points out, the statutory prohibition of § 562A(a) criminalizing "conduct for the sole purpose of coercing or intimidating" persons to contribute money or time to an organization is not necessarily inconsistent with the notion that the prohibition could encompass "charitable organizations." The legislature, however, did not use that common term in § 562A(a) but rather focused on social, economic, or political organizations. Because the statute is a penal measure, it must be strictly construed. Thus, "courts will not extend the punishment to cases not plainly within the language used." *Bacon v. State*, 322 Md. 140, 149, 586 A.2d 18 (1991); *Davis v. State*, 319 Md. 56, 61, 570 A.2d 855 (1990); *Wynn v. State*, 313 Md. 533, 539–40, 546 A.2d 465 (1988); *Jones v. State*, 304 Md. 216, 220, 498 A.2d 622, 624; *Briggs v. State*, 289 Md. 23, 31–32, 421 A.2d 1369 (1980); *State v. Archer*, 73 Md. 44, 57, 20 A. 172 (1890). As we said in *Davis, supra*, 319 Md. at 61, 570 A.2d 855, quoting *Cearfoss v. State*, 42 Md. 403, 407 (1875):

> " 'No man incurs a penalty unless the act which subjects him to it, is clearly, both within the spirit and letter of the statute. Things which do not come within the words are not to be brought within them by construction.' "

The reason for this policy is clear. It would be manifestly unfair to punish an individual for committing an act that was not known to be criminal when it was performed. We first said in 1885:

"It is not consistent with the just and benign spirit of our law to give to a criminal statute an interpretation which can be maintained only by a keen and scholarly ingenuity. The meaning of a law which consigns a man to prison, or deprives him of his property should be plain and obvious, and easily understood by an ordinary capacity."

*James v. State,* 63 Md. 242, 253 (1885).

## IV.

As we see it, a nonprofit fund-raising entity like the United Way Fund is not, in common parlance, a "social" organization or association. Plainly, the predominant purpose of the Fund is not a social one in the sense of an organization devoted to social activities, *i.e.,* friendly interaction, communication, recreation, and leisure activities.

Although presented in a different statutory context, the court in *United States v. McIntyre,* 253 F.2d 728 (4th Cir.1958), considered whether an incorporated community pool was, within the coverage of a federal internal revenue statute, a "social organization" subject to the payment of excise taxes on dues, initiation fees, and assessments charged against its members. The pool corporation maintained that it was not a social organization because, in part, it used the pool for meetings on the topic of juvenile delinquency and for recreation for underprivileged and handicapped children. The court held that the corporation was a social organization because it was used "as a social center of a suburban community where, by prearrangement and happenstance, members, their families and guests, meet their friends and neighbors, where conversation flows and 'informal committee meetings' are held, until the whole takes on the appearance 'of a great big family gathering.'" *Id.* at 731. The court looked to the organization's "predominant purpose." It contrasted a social organization to a

"professional society" and to an "eleemosynary institution," noting that eleemosynary organizations are a category separate and distinct from social organizations under the statute. For other cases concerning taxation of a "social organization," *see Cohan v. United States*, 198 F.Supp. 591 (E.D.Mich.1961) (nonprofit yacht club incorporated for purpose of engaging in yachting and boating and to promote those objectives was "social organization" for federal tax purposes); *Engineers' Club of Los Angeles v. United States*, 173 F.Supp. 934, 936 (S.D.Cal.1959) (where basic purposes of organization were essentially technical and professional, incidental and limited social activities do not alter nonsocial status for purposes of excise tax levies on dues and fees collected by organization); *Maryland Country Club, Inc. v. United States*, 539 F.2d 345 (4th Cir.1976) (country club classified as "social organization" for purposes of imposing federal excise taxes on dues, membership and initiation fees).

Even though the Fund may, by its charitable activities, promote the social welfare of the people, the legislature, in our view, did not intend that it be encompassed within the proscription of § 562A(a) as a "social" organization.

■ Nor do we think that the Fund is an "economic" organization or association within the contemplation of the statute. Merely because the Fund may collect, manage, invest, and distribute money in fulfillment of its nonprofit, charitable mission does not import to it the character of an economic organization in the usual and natural sense of that term. Indeed, there is virtually no organization that does not, in some fashion, participate in the economy; hence, whether an organization generates, earns, accepts, or spends money is not, we think, the test which the legislature intended to apply in determining whether an organization is an "economic" one under § 562A(a). While in a broad sense, an economic organization is one related to or connected with commerce or business, and within that definition might include a nonprofit organization, it is our view that had the legislature intended to treat "charitable orga-

nizations" like the Fund within the ambit of an "economic" organization, it would have specifically so provided. As earlier indicated, well before the enactment of § 562A(a), the General Assembly had given separate recognition and specific definition to a "charitable organization" under Code, Article 41, § 3–201(b)(1), and by that definition fully understood that, in the ordinary sense, it was different than a social or economic organization.[4] In so concluding, we find wholly unpersuasive the notion that the legislature intended to include any and all organizations or associations under § 562A(a) by its use of the phrase, "social, economic, or political association or organization."

CERTIFIED QUESTION ANSWERED AS HEREIN SET FORTH; COSTS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.

ELDRIDGE, Judge, dissenting:

The General Assembly, by enacting Code (1957, 1992 Repl.Vol.), Art. 27, § 562A(a), made it clear that the public policy of Maryland prohibited a person or organization from "coercing or intimidating another person to *contribute or donate* any goods, materials, services, or moneys to *any social, economic, or political* association or organization." (Emphasis added). The majority, however, holds that the public policy embodied in § 562A(a) does not cover the discharge of an employee because the employee refused to comply with her employer's directive that she donate part of her time and wages to the United Way Fund. The basis for the majority's holding is its conclusion that the United Way Fund is not a "social, economic, or political association or organization" within the meaning of the statute. The majority reaches this conclusion by first focussing on the term "social organization" in isolation and giving the term its narrowest possible meaning, and then dealing with the term

---

**4.** That section defines a charitable organization as "any benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such."

"economic organization" in isolation and giving that term a most restrictive meaning.

In my view, the majority violates the very principles of statutory construction which it sets forth, as the majority refuses to give the words of the statute their natural and usual meaning. Moreover, by construing each term "social organization" and "economic organization" in isolation, without regard to their context or other language in § 562A(a), the majority ignores the principle that,

> "in construing statutes in order to ascertain the legislature's intent, we do not read particular language in isolation or out of context. We construe statutory language in light of the legislature's general purpose and in the context of the statute as a whole. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513–516, 525 A.2d 628, 632–633 (1987). *See Jones v. State*, 311 Md. 398, 405, 535 A.2d 471, 474–475 (1988)."

*Forbes v. Harleysville Mutual*, 322 Md. 689, 696–697, 589 A.2d 944, 947–948 (1991).

As the dictionary definitions quoted by the majority demonstrate, the words "social" and "economic" have very broad meanings. For example, one definition of "social" is "relating to human society." The word "political" also covers many types of organizations. By grouping these three broad adjectives together in the disjunctive, preceded by the word "any," the General Assembly obviously intended that the prohibition embodied in § 562A(a) related to a wide range of organizations or associations. Absent any legislative history indicating that the General Assembly intended something narrower than the normal meaning of the words, the language "any social, economic, or political association or organization" is all encompassing, excluding perhaps only governmental entities.[1]

---

1. *See Lomax v. Comptroller*, 323 Md. 419, 421–423, 593 A.d 1099, 1100–1101 (1991); *Nationwide v. USF & G*, 314 Md. 131, 137, 550 A.2d 69, 72 (1988), and cases there cited.

The crux of the evil at which the General Assembly was aiming in § 562A(a) was coercing or intimidating persons to make contributions or donations. The statute reflects the principle that donations or contributions to organizations should be voluntary and not coerced. While the Legislature certainly did not want to preclude mere persuasion, it nevertheless believed that contributions and donations should be the product of voluntary action. Giving an ultra narrow construction to the language of the statute designating the recipients of the contributions or donations is inconsistent with this legislative purpose. Neither the statutory language nor reason supports the majority's conclusion that coerced contributions to some organizations are desirable.

The majority seems to hold that "social" organizations within the meaning of § 562A(a) are limited to entities like pool clubs, yacht clubs, and country clubs. It further holds that "economic" organizations within the contemplation of the statute are limited to profit making entities. Nothing in the statutory language or purpose supports this restrictive view.

The majority takes the position that if the General Assembly intended that coerced contributions to charitable organizations be forbidden, it should have used the word "charitable" along with "social, economic, or political." Where the Legislature intends to encompass all types of organizations, however, it need not employ a multitude of adjectives and list every specific type of organization covered. The General Assembly clearly can use umbrella terms embracing charitable and many other types of organizations.

Apparently to justify the limitations inserted into § 562A(a), the majority invokes the principle that "[b]ecause the statute is a penal measure, it must be strictly construed." This principle, however, does not authorize a court's refusal to give effect to plain statutory language simply because the language is broad. *See, e.g., Belman v. State,* 322 Md. 207, 213–214, 586 A.2d 1281, 1284 (1991);

*State v. Fleming,* 173 Md. 192, 196, 195 A. 392, 393–394 (1937). As Chief Judge Murphy pointed out for the Court in *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275, 279 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976),

> "penal statutes, like other statutes, are to be fairly and reasonably construed and courts should not, by narrow and strained construction, exclude from their operation cases plainly within their scope and meaning."

Even if one accepted the majority's approach of examining each of the terms "social organization" and "economic organization" separately, and even if a restrictive definition of "social organization" were justified, the United Way Fund is clearly an "economic organization." The Fund is simply a money raising entity. It does not engage in any charitable work itself; instead, the Fund raises money for various charities. Except for its being nonprofit, it is the same as the organization involved in *Joseph H. Munson Co. v. Sec. of State,* 294 Md. 160, 165, 448 A.2d 935, 938 (1982), *aff'd,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), which was "in the business of fund raising." To hold that an organization, whose sole purpose is to raise and distribute money, is not an "economic organization," is to distort the plain and normal meaning of words.[2] There is simply no justification in the statutory language or purpose for the majority's view that the General Assembly intended to exclude non-profit entities.

Furthermore, other language in § 562A(a) demonstrates that the General Assembly did not intend to exclude non-profit entities. "Political" organizations are expressly encompassed, but they are non-profit entities. In addition, § 562A(a) forbids coercing or intimidating another person "to contribute or donate any goods, materials, services, or

---

**2.** The majority's construction reminds one of Lewis Carroll's passage in *Through the Looking Glass* (Chapter 6): " 'When I use a word,' Humpty–Dumpty said in a rather scornful tone, 'it means just what I choose it to mean—neither more nor less.' "

moneys." Contributions and donations are usually made only to non-profit organizations. A construction of § 562A(a) which excludes contributions and donations to non-profit organizations renders the statute largely ineffective.

In sum, I believe that the Court's unwarranted construction of Art. 27, § 562A(a), has to a great extent undermined the legislative purpose of protecting individuals from having to make coerced contributions to various organizations.

Judge Bell has authorized me to state that he concurs with the views expressed herein.