606 A.2d 1072

**INSURANCE COMMISSIONER OF the STATE of Maryland,**

v.

**BANKERS INDEPENDENT INSURANCE COMPANY.**

**No. 128, Sept. Term, 1991.**

Court of Appeals of Maryland.

June 5, 1992.

Randi F. Reichel, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellant.

Lloyd David Yavener, Gaithersburg, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

MURPHY, Chief Judge.

This case involves the collection of taxes from a Maryland domestic insurance company on gross direct premiums received for coverage provided for risks located beyond the territorial limits of the United States.

## I.

Maryland Code (1991) Art. 48A, § 632 provides in pertinent part:

"(a) *Gross direct premiums.*—(1) There is imposed upon every insurance company a tax on all new and renewal gross direct premiums allocable to this State and written during the preceding calendar year.

"(2) The tax rate is zero % in the case of considerations for annuities and 2% in the case of all other premiums (except property insurance written by domestic mutual insurance companies) without deduction for any cause whatever except as provided in subsection (b) of this section.

\* \* \* \* \* \*

"(c) *Allocation of gross direct premiums.*—(1) Gross direct premiums, or portions thereof, derived from or reasonably attributable to insurance business in this State shall be allocated to this State.

"(2) The Insurance Commissioner may require or allow, by regulations, such method or methods of allocating the gross direct premiums written by insurance companies as may justly and fairly determine the portion thereof derived from or reasonably attributable to their insurance business in this State."

Pursuant to the authority vested in him under subsection (c)(2) of this section, and in Art. 48A, § 26,[1] the Insurance Commissioner promulgated the following regulation applicable to all domestic insurers:

"C.  Taxes on Premiums Received by Domestic Companies Which Are Not Taxed by Another State.  In determining the amount of direct premiums taxable in this State, premiums written, procured, or received in this State shall be deemed written on property or risks located or resident in this State, except such premiums as are

---

1. Section 26 provides, in pertinent part, that
"[t]he Commissioner may make reasonable rules and regulations necessary for or as an aid to effectuation of any provision of this article."

properly allocated or proportioned and reported as taxable premiums of any other state or states."
COMAR 09.30.12.04.

## II.

Bankers is a Maryland domestic insurance company, having converted from a mutual to a stock company in 1986. It insures risks located outside of the territorial United States upon personal property not within this country. The Insurance Commissioner claimed that Bankers owed premium taxes on its overseas business for 1987, 1988, and 1989 in the amount of $108,261.66. No other jurisdiction, either within or without the United States, taxed the premiums which Bankers collected for that business and none has indicated an intention to do so.

Bankers protested the assessment. The question, it said, was whether the COMAR regulation authorized taxing a Maryland domestic insurer upon gross direct premiums received on business in foreign countries. It did not contend that the State, under proper circumstances, may not tax premiums received from its overseas business, but only that the implementing COMAR regulation did not authorize a tax on its overseas business. Bankers first focused on the caption of the COMAR regulation, namely, "Taxes on Premiums Received by Domestic Companies Which Are Not Taxed by *Another State.*" (Emphasis added.) It concluded that because there was no ambiguity in the word "State," the regulation does not encompass jurisdictions outside of the territorial United States and consequently does not cover premiums on overseas business. Moreover, Bankers pointed out that the body of the implementing regulation, following the caption, is similarly limited to "any other state or states," thereby restricting the subject matter of the caption to premiums derived from a state. It further contended that the COMAR regulation unambiguously was promulgated to determine which premiums are attributable to insurance business in this State. A proper construction of the regulation, according to Bankers, required that pre-

miums from insurance outside of the territorial United States are not allocable or attributable to insurance business in this State.

The Maryland Tax Court concluded that § 632 imposed the tax "on all new and renewal gross direct premiums allocable to this State." It said that the COMAR regulation simply makes clear that if the premiums were taxed in another state, they would not be taxed in Maryland. The Tax Court concluded that the regulation was designed as a means to avoid double taxation. It held that § 632 imposed the tax and that the regulation did not except the premiums generated from foreign business. Specifically, it said that the COMAR regulation, by its use of the words "state or states" did not intend to eliminate the payment of taxes on premiums written on business in foreign countries.

On Bankers' appeal to the Circuit Court for Montgomery County, that court (McAuliffe, James) reversed the order of the Tax Court. It noted that the statute specified "what" shall be taxed, namely, "[g]ross direct premiums, or portions thereof, derived from or reasonably attributable to insurance business in this State." It observed that § 632 authorized the Commissioner, by regulation, to specify "who," among insurers, received premiums derived from or reasonably attributable to their insurance business in Maryland. The court said that the COMAR regulation adopted a method of allocating gross direct premiums to accomplish this purpose. It then focused on the wording of the CO-MAR regulation, and particularly the words "Another State" in the caption and the words "any other state or states" in the last sentence. It said that if these words are to be given meaning, the subject matter of the regulation would not cover premiums on business written in a foreign country. Specifically, it said that principles of statutory construction require "that the word 'other' in the exception [in the COMAR regulation] limits the subject matter of the main clause to premiums derived in a state."

The Insurance Commissioner appealed from the circuit court's judgment. We granted certiorari before consideration of the appeal by the intermediate appellate court.

### III.

The Insurance Commissioner contends that under the plain language of § 632, *all* stock insurance companies pay a 2% tax on *all* premiums allocable to this State. It is this statute, the Commissioner says, and not the COMAR regulation, which imposes the tax upon Bankers. The only issue in the case, according to the Commissioner, is whether the premiums collected on Bankers' overseas business are properly allocable to Maryland under § 632 and the CO-MAR regulation. The Commissioner emphasizes that the regulation does no more than set forth the allocation mechanism for premium taxation in Maryland and does not itself purport to "impose a tax upon any insurer." Indeed, he argues that the COMAR regulation provides in no uncertain terms that all premiums "written, procured, or received in this State shall be deemed written on property or risks located or resident in this State," with the exception of "such premiums as are properly allocated or proportioned and reported as taxable premiums of any other state or states." Thus, the Commissioner says that if these premiums are taxed by another state, Maryland will not tax them.[2] The Commissioner urges that the circuit court's determination concerning the significance of the words "Another State" and "any other state or states" is misplaced. This is so, according to the Commissioner, because the exception clause in the COMAR regulation is concerned only with avoiding the burden of double taxation and not with relieving Maryland's domestic insurers of premium taxes on foreign business; therefore, no applicable excep-

---

**2.** The Commissioner also stipulated before the Tax Court that he would not tax insurers on foreign business if that business was taxed by the foreign country.

tion exists from taxation under the statute upon Bankers' foreign generated business.

As earlier observed, Bankers does not challenge the State's authority to tax premiums generated abroad by a Maryland domestic insurance company. Indeed, the Commissioner points out that Bankers has taken advantage of the privilege of doing business in this State and that this creates a sufficient nexus between its premium income and Maryland's right to tax the insurer. In this regard, the Commissioner explains that Bankers benefits from Maryland's excellent economic and business climate. It uses the State's roads; relies upon its regulatory system for protection; reviews Bankers' rates and forms; oversees its solvency; and benefits from services provided by Maryland's government. That there is no per se constitutional impediment for a state to tax premiums generated on overseas business is well recognized. *See Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940); *Xerox Corporation v. Comptroller of the Treasury*, 290 Md. 126, 428 A.2d 1208 (1981).

## IV.

The language of § 632, the parties agree, is not ambiguous. We thus ascribe to the words of the statute their natural and ordinary meaning. *See Ball v. United Parcel*, 325 Md. 652, 656, 602 A.2d 1176 (1992); *State v. Bricker*, 321 Md. 86, 92, 581 A.2d 9 (1990). The same cardinal rule of statutory construction is applicable to the COMAR regulation. *Md. Port Adm. v. Brawner Contracting Co.*, 303 Md. 44, 60, 492 A.2d 281 (1985). Moreover, that construction must be in conformity with the provisions of the statute. *See* COMAR 09.30.01.03. And it is axiomatic that an administrative regulation must be consistent with the letter and policy of the statute under which the administrative agency acts. *Falik v. Prince George's Hosp.*, 322 Md. 409, 417, 588 A.2d 324 (1991). As we observed in

*Baltimore v. William E. Koons, Inc.,* 270 Md. 231, 236–37,
310 A.2d 813 (1973), a legislatively delegated power to make
rules and regulations is administrative in nature, and it is
not and cannot be the power to make laws; it is only the
power to adopt regulations to carry into effect the will of
the legislature as expressed by the statute. Legislation
may not be enacted by an administrative agency under the
guise of its exercise of the power to make rules and
regulations by issuing a rule or regulation which is incon-
sistent or out of harmony with, or which alters, adds to,
extends or enlarges, subverts, impairs, limits, or restricts
the act being administered.

It is crystal clear that § 632, and not the COMAR regula-
tion, imposes the premium tax and does not exempt a
Maryland domestic insurer from paying such taxes to this
State upon its foreign business. Section 632(c)(2) autho-
rizes the Commissioner, by regulation, to establish a meth-
od of allocating premiums "as may justly and fairly deter-
mine the portion thereof derived from or reasonably attrib-
utable to [the insurer's] business in this State." The CO-
MAR regulation attributes "premiums written, procured, or
received in this State" as having been written upon proper-
ty or risks located in Maryland with the single exception of
premiums "properly allocated or proportioned and reported
as taxable premiums of any other state or states." Under
§ 632, and the regulation, premium income which is untaxed
by any other jurisdiction, and which does not qualify for the
exception to taxation, is subject to taxation. That foreign
countries are not mentioned in § 632, or in the COMAR
regulation, does not mean that the regulation has exempted
untaxed premium income earned by an insurer on its for-
eign business simply because the foreign country is not a
"state." The premiums in question were received in Mary-
land and, consistent with the stipulation in this case, were
not taxed by the foreign country.

To exempt Bankers from premium taxation on its foreign
business, for which the premiums were received in Mary-
land (thereby insuring risks "constructively" deemed by

statute located in this State), would be inconsistent with § 632. Manifestly, this would run afoul of our cases, as well as COMAR 09.30.01.03 which mandates that the regulation be construed in conformity with the statute. Read together, the statute and the regulation create a scheme for taxing all domestic insurance companies on premiums received, procured, or written in Maryland unless taxed by another jurisdiction. Quite simply, the exception exists to protect insurers from double taxation, and is of no benefit to Bankers under the circumstances of this case.

JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE ORDER OF THE MARYLAND TAX COURT; COSTS TO BE PAID BY THE APPELLEE.