UNITED STATES of America, Appellee,

v.

Raymond CARTER, Appellant.

No. 77–1899.

United States Court of Appeals,
Third Circuit.

Argued Feb. 21, 1978.

Decided May 23, 1978.

---

Robert J. Del Tufo, U. S. Atty., Terence P. Flynn, Asst. U. S. Atty., Newark, N. J., for appellee.

John D. O'Connell, Detroit, Mich., for appellant.

Before ADAMS and HIGGINBOTHAM, Circuit Judges, and MARKEY, Chief Judge.*

---

* Honorable Howard T. Markey, Chief Judge of United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal by Raymond Carter from convictions (a) for conspiring to possess with intent to distribute as well as to distribute heroin,[1] (b) for possessing with intent to distribute approximately 95 grams of heroin,[2] and (c) for distributing approximately 677 grams of heroin.[3]

### I.

After trial, which commenced on March 24, 1977, and ended on March 29, 1977, the jury returned a verdict of guilty on each of the foregoing three counts.[4] On May 11, 1977, the defendant was sentenced to three concurrent terms, each consisting of fifteen years in the custody of the Attorney General, to be followed by a special parole term of five years. The present appeal ensued.

Testimony at the trial revealed that on August 15, 1976, Carter carried heroin from Los Angeles to a distributor, Willie George "Raes" Gorsuch, in Newark. Gorsuch and his brother met Carter upon his arrival at the airport and took him to Gorsuch's home, where Carter gave Gorsuch nineteen one-ounce packages of heroin, which Carter had transported in his boots. Gorsuch then took Carter to the Harvard Green Motor Hotel, where Carter "checked in". Upon returning home, Gorsuch "cut" or diluted a large portion of the heroin that he had obtained from Carter, and readied it for a sale that was scheduled to occur the following day. Gorsuch also put aside for himself 95 grams of the heroin that he had received from Carter.

On August 16, Gorsuch, his brother and a female friend proceeded to the Harvard Green Motor Hotel. The brother went to Carter's room, while Gorsuch and his friend undertook to deliver the heroin. After selling the substance to individuals who in fact were federal agents, Gorsuch and his friend were arrested by the agents. Although Carter was not arrested at that time, his involvement in the conspiracy was established as a result of statements made by Gorsuch while the latter was cooperating with the federal agents.

### II.

■ Carter argues that he committed only a single offense, namely, the delivery on August 15 of a quantity of heroin to Gorsuch. He notes that it was Gorsuch who then diluted and separated the single quantity of heroin received from Carter, and who retained 95 grams of the diluted heroin while distributing a different 677 grams. In light of these facts, Carter insists that the indictment, which accused him in separate counts with possession with intent to distribute 95 grams of heroin and with distribution of 677 grams of heroin, was multiplicious, for it charged him in separate counts with acts made by his co-conspirator after he, Carter, delivered a single quantity of heroin to Gorsuch. Such method of indicting, Carter urges, requires either a reversal of his convictions for possession and for distribution and a remand for a new trial or, at the very least, a vacating of the improper convictions and a remand for resentencing.[5]

1. This is a violation of 21 U.S.C. §§ 841(a)(1) and 846.

2. Such act is in contravention of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

3. The conduct charged is violative of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

4. Carter had also been charged with assaulting a federal officer. At the conclusion of the government's case, Carter moved for a dismissal of the prosecution. The district court granted his motion only as to the assault count, leaving intact the three counts of conspiracy, possession with intent to distribute and distribution of heroin.

5. The record does not make clear whether Carter actually raised the multiplicity issue in the district court. However, both parties briefed the issue on appeal. In this instance, we elect to examine the multiplicity question and thus to exercise our power under 28 U.S.C. § 2106 "to dispose of cases before us in such manner 'as may be just under the circumstances.' " *O'Neill v. United States*, 411 F.2d 139 (3d Cir. 1969).

■ Multiplicity, the charging of a single offense in different counts of an indictment, has the vice that it may lead to multiple sentences for a single violation. And even if that does not result, it may prejudice the jury against the defendant by creating the impression of more criminal activity on his part than in fact may have been present. *See* Wright & Miller, I *Federal Practice and Procedure, Criminal* § 142, at 311 (1969). The basic inquiry in determining whether counts of an indictment are truly separate, and not multiplicious, is whether proof of one offense charged requires an additional fact that proof of the other offense does not necessitate. *Cf. United States v. Beacon Brass Co., Inc.*, 344 U.S. 43, 45, 73 S.Ct. 77, 97 L.Ed. 61 (1952). Also of central importance is whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts.

■ In the factual pattern presented here, we are faced with two issues: first, whether Carter may properly be convicted for the substantive offenses actually committed by Gorsuch when Gorsuch diluted and cut the heroin, and thereafter retained a portion of the substance in his possession and sold a larger quantity of it to federal agents; second, whether Carter may properly be sentenced for both possession with the intent to possess 95 grams of heroin and distribution of 677 grams of heroin.

We conclude that Carter may be held responsible on both the possession and the distribution counts despite the fact that the specific acts of possessing and distributing the heroin in question were performed by Gorsuch, and not by Carter. Inasmuch as the jury found that Carter was a member of the conspiracy that was the subject of the indictment, he was chargeable with and responsible for the two particular substantive offenses committed in furtherance of the conspiracy at a time that he was a member of it.[6] Thus, unless there is another reason for reversal, the conviction and sentencing of Carter on the two counts must be upheld.

■ As to the second issue, we consider that Congress, in enacting 21 U.S.C. § 841, did intend that two distinct offenses, punishable by separate sentences, should be seen to arise when the evidence shows—as it did here—that the acts of possession and distribution involved discrete quantities of narcotics, and thus that the facts required to prove the two offenses differ. For in this case, Gorsuch successfully completed one sale of narcotics to federal agents and, at the same time, retained a separate quantity of narcotics that the jury apparently presumed was intended for another and subsequent distribution. Because Gorsuch's retention and possession of the 95 grams of heroin was not necessary or incident to his distribution of the 677 grams of heroin, we conclude that the proof of the possession count was indeed distinct from the proof of the distribution count.

The parties have not directed the Court's attention to any legislative history that is contrary to our determination. Nor are the policies of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.*, frustrated by the interpretation of the statute that we have made in this case. When an individual possesses an amount of heroin that could result in a future distribution, and when the same individual also distributes another quantity of heroin, he is punishable for both possession and for distribution.[7]

■ Carter makes a number of additional contentions: namely, that throughout the trial the district court presented an appearance of partiality toward the government, and thus so prejudiced the defendant as to deny him a fair trial; that the trial court

---

6. *Cf. United States v. Prieto*, 505 F.2d 8, 11 (5th Cir. 1974). (". . . as a conspirator, Diaz became responsible for substantive offenses committed in furtherance of the conspiracy whether he personally participated in them or not.)

7. We are not faced with a need to determine whether there is no limit whatsoever in holding a conspirator chargeable with the substantive crimes of a co-conspirator. That issue may fittingly be addressed when the Court is presented with an appropriate factual setting.

committed reversible error by instructing the jury that evidence of Carter's flight from the scene of the heroin distribution could be weighed in ascertaining Carter's guilt or innocence; that the government's attorney transgressed upon the defendant's Fifth Amendment privilege by allegedly referring, in argument before the jury, to Carter's failure to testify; and that, even if no single error is sufficient to prompt reversal, taken as a whole the supposed improprieties pointed out above gave rise to a denial of Carter's right to due process. We have carefully considered each of these claims, and have found them to be, both individually and collectively, an inadequate basis on which to reverse the district court's judgment in this case.

### III.

Accordingly, the judgment of the district court will be affirmed.