536 A.2d 1161

**Leonard WEBB**

**v.**

**STATE of Maryland.**

**No. 108, Sept. Term, 1987.**

Court of Appeals of Maryland.

Feb. 10, 1988.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kurl L. Schmoke, State's Atty. for Baltimore City, and William McCollum, Asst. State's Atty., on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), specially assigned.

CHARLES E. ORTH, Jr., Judge, Retired, Specially Assigned.

## I

Some 15 years ago the Legislature, spurred by "a dramatic increase in the number of crimes perpetrated with handguns and a concomitant increase in the number of deaths and injuries caused by persons carrying handguns on the streets who were 'inclined to use them in criminal activity,'" enacted "strong handgun control legislation." *State v. Crawford*, 308 Md. 683, 693, 521 A.2d 1193 (1987), referring to Acts 1972, Ch. 13 and citing the "Declaration of Policy" set out in Maryland Code (1957, 1982 Repl. Vol.) Art. 27, § 36B(a)(i)–(ii). As part of a comprehensive legislative scheme "to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens," § 36B(a)(iv), the Legislature made it a misdemeanor for

[a]ny person [to] wear, carry, or transport any handgun, whether concealed or open, upon or about his person. . . . Art. 27, § 36B(b). Cole, J., speaking for the Court in *Crawford*, after tracing the history of the handgun control legislation, noted that § 36B(b) "sets forth a blanket rule," 308 Md. at 693, 521 A.2d 1193, "designed to discourage and punish the possession of handguns on the streets and public ways," *id.*, at 695, 521 A.2d 1193.[1]

## II

Leonard Webb was twice convicted of unlawfully wearing, carrying and transporting a handgun upon or about his person in violation of Art. 27, § 36B(b). The convictions came about in this manner.

About 1:30 a.m. on 13 May 1986 Montique Gross was walking home from a bar in South Baltimore when he met Webb. Webb told Gross that he needed money for a "fix." Webb held a handgun, "a long .38 with a wooden handle" to the side of his left leg. Gross was "scared." He gave Webb $50 and left the scene. As Webb walked away "he placed the gun in his back." Charles Cooper was present at the encounter between Webb and Gross. Cooper described the transaction as "a $20 loan, which [Webb] repaid the next morning." According to Cooper, after Webb was given the money, Cooper and Webb went to a friend's home in West Baltimore, and then returned to Cooper's house in South Baltimore and "just hung around." Later that morning, according to Cooper, Webb and Gross met again. Cooper denied seeing Webb with a gun that night. Gross had gone home after he gave the money to Webb, but left the house about 2:00 a.m. "Sometime thereafter he saw [Webb] and demanded the return of his money. [Webb] said he would pay it back later that day. Gross then returned home. He later swore out a warrant because the money was not given back." The State's Attorney for the

---

1. Maryland Code (1957, 1982 Repl.Vol.) Art. 27, § 36B(c) specifically sets forth exceptions to the prohibitions of § 36B(b).

City of Baltimore informed the Circuit Court for Baltimore City by way of a criminal information that Webb had committed robbery with a deadly weapon and seven other related crimes. The eighth count of the information stated that Webb had unlawfully worn, carried and transported a handgun upon or about his person.

About three hours after the initial encounter between Webb and Gross on 13 May, a Baltimore City Police Agent received a report of a man discharging a firearm. The Agent met a woman who described the man and alleged that he had attempted to rob her son. Shortly thereafter, about 4:30 a.m., the Agent saw Webb walking along a South Baltimore street. The Agent braced Webb against a nearby automobile.

He stopped, put his hand on the hood. When he bent over—he had a split suit coat on—when he bent over the split on the coat opened and revealed a revolver.

The Agent arrested Webb and seized the weapon. It was a .38 caliber, blue steel revolver with a wooden grip. It contained five cartridges—four live and one spent. Webb was charged under a statement of charges with unlawfully wearing, carrying and transporting a handgun upon or about his person.

Webb was first tried in a Maryland district court on the charges arising from his arrest by the Baltimore City Police Agent about 4:30 a.m. on 13 May 1986. He was convicted of unlawfully wearing, carrying and transporting a handgun upon or about his person as proscribed by Art. 27, § 36B(b). A sentence of a term of imprisonment of one year was imposed.

Webb was subsequently tried by a jury in the Circuit Court for Baltimore City on the criminal information arising from the incident with Gross which occurred about three hours before his arrest by the Police Agent. He was again found guilty of unlawfully wearing, carrying and transporting a handgun upon or about his person as proscribed by Art. 27, § 36B(b). A sentence of a term of imprisonment of

three years, to run consecutively to the prior one year sentence, was imposed. Webb noted an appeal to the Court of Special Appeals from this judgment. We certified the case to us before decision by that court.

### III

Webb presents the question:

Is the State statutorily and constitutionally prevented from prosecuting, convicting, and punishing [him] twice for carrying a single handgun over a three hour period?

### A

The State suggests that the question was not preserved for appellate review. We do not agree. The fact of the prior conviction and sentence for violation of Art. 27, § 36B(b) was brought to the attention of the circuit court before trial by way of a motion in limine. The effect of the prior judgment on the current charge was fully discussed, and the court denied Webb's motion that the State "be prohibited from any mention of the fact that [Webb] was arrested at a later time for being in possession of a handgun." The fact of the prior conviction and sentence was presented to the trial court at the guilt stage of the trial on a motion for judgment of acquittal at the close of all the evidence, at the disposition stage of the trial regarding the sentence to be imposed, at post-trial on a motion to strike the judgment, and at a motion for a new trial. Webb steadfastly contended that the fact of the prior judgment in the circumstances here should have precluded the charge from going before the jury and prohibited the imposition of another sentence for violation of § 36B(b). Each time the effect of the prior judgment was fully discussed and argued in those terms and determined thereon. It is immaterial that the defense did not employ the phrase "continuing offense" or "double jeopardy." The arguments were couched in the frame of reference of those doctrines and it is clear that the trial judge and the State were cognizant of

the bases of Webb's contentions. We hold that the question is properly before us.

## B

The provisions of Art. 27, § 36B(b) with which we are here concerned are plainly and simply stated. As hereinbefore indicated the statute reads:

> Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person ... shall be guilty of a misdemeanor....

This misdemeanor as created by the Legislature, in effect, makes the mere possession of a handgun a crime subject to the carefully designated exceptions set out in § 36B(c). It is in the nature of a possession offense. "When mere possession of a prohibited article is a crime, the offense is a continuing one because the crime is committed each day the article remains in possession, as there is a continuing course of conduct." *Duncan v. State,* 282 Md. 385, 389, 384 A.2d 456 (1978). *See State v. James,* 203 Md. 113, 119–120, 100 A.2d 12 (1953), and 1 Wharton's Criminal Law and Procedure § 181 (1957). The concept of a continuing offense is usually bespoken in terms of the statute of limitations, but its principles are applicable to the question at hand.

In insisting that the circumstances here permit two convictions and two punishments, the State, as did the trial court, looks to the interval elapsing between the times Webb was observed carrying the handgun and to the incidents surrounding the carryings. The position of the court was reflected in its comments immediately after the jury rendered its verdict. Defense counsel brought up again the prior conviction and questioned whether "it is proper to sentence the man twice to that charge within the period of three to four hours." It seemed to him that "hypothetically, suppose if five or six different people had seen him with a handgun, I don't believe he could be sentenced five or six times." The transcript of the proceedings reads:

> THE COURT: That's different.

MR. EATON [Defense Counsel]: I don't think it is any different.

THE COURT: It is a great difference. Suppose, for instance, he was seen twenty-four hours later with a handgun? You are talking about three or four hours later, what about twenty-four hours, forty-eight hours.

MR. EATON: Suppose he had been seen by ten different people.

THE COURT: I am talking about different times different times and different people are two different things.

MR. EATON: Suppose he had been seen ten different times.

THE COURT: Seen ten different times or ten different days.

MR. EATON: Same day.

THE COURT: I am saying, if he had been seen ten different times on ten different consecutive days wearing transporting or carrying a handgun, he would be guilty of each one of those ten times because everytime he carried it he will be guilty of the new offense. Now, where do you cut it off? If he had it three or four hours later, that's a totally different time. If he had been convicted of wearing, carrying, transporting a handgun at a point in time ten or five, ten minutes before, I might go along with your argument. I think three or four hours is a little too long for you to argue that it is not a different time. I will ask you where do you cut it off?

MR. EATON: I think as long as it is the same day, I think that's appropriate.

The court did not agree. It said, "I guess it depends on what perspective you are looking at it from." On the motion for a new trial, the State took the position that since there were two separate incidents, there were two separate offenses of § 36B(b) involved. The State believed that this interpretation was covered by the statute. The court was "satisfied that these two occurrences are separate and distinct." Before us, the State adhered to that position,

arguing that inasmuch as two persons were put at risk while the gun was being carried, there were two separate and distinct offenses of carrying it.

In its comprehensive scheme for handgun control, the Legislature approached the problem more than one way. In one section it dealt with the unlawful use of a handgun in the commission of a crime as follows:

Any person who shall use a handgun or an antique firearm capable of being concealed on the person in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor....

Md. Code (1957, 1982 Repl. Vol., 1987 Cum.Supp.) Art. 27, § 36B(d). This is not a possession crime and is not a continuing offense. It consists of a definite act or a definite result of some act. *See Duncan v. State, supra,* 282 Md. at 388, 384 A.2d 456. If the circumstances involving the use of the prohibited weapon put two persons at risk or concern two distinct incidents, there are two separate and distinct violations of the statute, permitting two convictions and two punishments. The unit of prosecution is the crime of violence. This is so because the act prohibited by § 36B(d) "is the use of a handgun in the commission of a felony or violent misdemeanor." *Brown v. State,* 311 Md. 426, 435, 535 A.2d 485 (1988). In other words, "multiple handgun use convictions and sentences are appropriate where there are multiple victims." *Id.* at 436. *See Battle v. State,* 65 Md.App. 38, 50, 499 A.2d 200 (1985), *cert. denied,* 305 Md. 243, 503 A.2d 252 (1986).

■ In addition to the handgun use prohibition, the Legislature enacted § 36B(b), the "blanket rule," *Crawford v. State,* 308 Md. at 693, 521 A.2d 1193, with which we are here concerned. The unit of prosecution of that continuing crime is the wearing, carrying or transporting of any handgun, whether concealed or open, upon or about the person. There is no requirement as to time, use, person at risk or

incident. We cannot read into the plain language of the section the intent that a lapse of time or more than one person put at risk or multiple incidents would initiate separate offenses.[2] To construe the statute as the State would have us do would require us to doff our judicial robes and don a legislative hat. We cannot indulge in such judicial legislation; we must take the statute as it reads, not rewrite it.

It may be that were the wearing, carrying, or transporting of the handgun by Webb interrupted by some lawful possession of it, for example, wearing, carrying, or transporting it "within the confines of real estate ... upon which he resides ...," § 36B(c)(4), a subsequent unlawful wearing, carrying, or transporting of it would constitute another violation of the statute. And it may be that had Webb removed the weapon from his actual or constructive possession, it would be a separate violation when he retrieved it and wore it again on his person. And it may be that if it was shown that the handgun involved in the first incident was a different weapon from that involved in the second incident, there would be two violations. But if any of these circumstances were in fact so, it was incumbent upon the State at trial to prove the circumstance beyond a reasonable doubt. In short, as Webb asserts, "[I]f the State seeks to sustain multiple convictions and sentences, it must generate a record that will support them." The record here is not adequate to do so.

■ On the record before us, all that was proved which was material with respect to the circumstances surrounding

---

**2.** When we seek to ascertain and effectuate legislative intent, the primary source is the language of the statute itself. This language must be given its natural and ordinary signification, bearing in mind the statutory aim and objective. *Boulden v. Mayor and Commissioners of the Town of Elkton,* 311 Md. 411, 414, 535 A.2d 477 (1988), citing *In Re Ramont K.,* 305 Md. 482, 484, 505 A.2d 507 (1986), and *Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987).

the handgun offense was that on 13 May 1986, about 1:30 a.m., Webb was unlawfully carrying a handgun, and that about three hours later he was unlawfully carrying a handgun. The State did not establish that more than one handgun was involved or that the carrying of the weapon between 1:30 a.m. and 4:30 a.m. was intermittent. When we consider the facts and circumstances of the convictions and punishments, in light of the plain language of § 36B(b) and the legislative scheme behind the entire gun control act, it is apparent that Webb had committed only one offense in the contemplation of § 36B(b). It follows that upon the entering of the judgment against him in the Circuit Court for Baltimore City, he was twice convicted and punished for the same crime. Of course, this was improper. It was without the ambit of § 36B(b); it was repugnant to the double jeopardy provisions of Amendment V to the Constitution of the United States; and it was contrary to the common law doctrine of double jeopardy recognized by this State.[3] We reverse the judgment of the Circuit Court for Baltimore City.

We point out that we reach our decision only on the facts and circumstances of this case. We mean to offer no suggestion as to what conduct of an accused may comprise separate and distinct offenses within the language of the statute. But if the sweep of the statute is to be enlarged, it is the province of the Legislature to do so by appropriate legislation.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED;

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

---

**3.** "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." Amendment V to the Constitution of the United States. *See Benton v. Maryland,* 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707, 717 (1969); *Mason v. State,* 302 Md. 434, 438–439, 488 A.2d 955 (1985).