867 A.2d 1040

**Jesse ANDERSON**

**v.**

**STATE of Maryland.**

**No. 41, Sept. Term, 2004.**

Court of Appeals of Maryland.

Feb. 9, 2005.

Brian M. Saccenti, Asst. Public Defender, Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

There is substantial evidence that petitioner, Jesse Anderson, sold heroin to two undercover Baltimore City detectives. The question is whether, because of the way the State chose to proceed in the case, Anderson may be prosecuted for those offenses. The answer is "no."

## BACKGROUND

Anderson was the target of a sting operation conducted by Detectives Clasing, Barnes, and Butler. The operational *scenario,* as described by Detective Clasing, was to send one or more undercover detectives to purchase drugs from the target, to wait until those detectives, after purchasing the drugs, left the area, and then to have another detective accost the target in order to ascertain his identity. So as not to compromise the continued effectiveness of the undercover officers, charges against the target are normally delayed for a time.

In furtherance of that scheme, at 1:55 p.m. on October 1, 2002, Detective Barnes approached Anderson in the 1500 block of Myrtle Avenue and purchased two capsules of heroin from him for $20. Anderson removed the capsules from a cigarette pack he was holding. With the purchase complete, Barnes left the area. Five minutes later, Detective Butler approached Anderson, in the same place, and he, too, purchased two capsules containing heroin for $20 and then left the area. Those capsules also were removed from the cigarette pack. After making their respective purchases, Barnes and Butler called Detective Clasing and gave him a description of Anderson.

At about 2:30 p.m., Detective Clasing approached Anderson in order to conduct what he referred to as a "field interview." After directing Anderson to sit down on the curb, Clasing saw him throw a red object under a parked car. Clasing retrieved the object and found it to be a cigarette pack containing 25 capsules of suspected heroin. Clasing arrested Anderson and, the next day—October 2, 2002—filed a Statement of Charges against him in the District Court. The Statement of Charges accused Anderson of one count of possession of heroin on October 1, 2002, at 1500 Myrtle Avenue. Eight days later, October 10, Anderson appeared in District Court and, either on a plea of guilty or a plea of not guilty with an agreed statement of facts—which of the two is not entirely clear—he was found guilty and sentenced to a term of nine months in the Baltimore City Jail, which he began serving immediately.[1]

---

1. The transcript of the District Court proceeding that was included in the record leaves a great deal to be desired and raised some serious concerns on our part. It shows that the possession of heroin charge was consolidated with a possession of cocaine charge arising from an entirely separate incident that occurred on September 12. It gives no indication that the State was represented at the trial, which, as noted, took place only eight days after the Statement of Charges was filed. There is no indication anywhere in the transcript that a prosecutor, or even Detective Clasing, who filed the Statement of Charges, was present. Clasing later testified that he was not present. The transcript shows that the only participants were the judge, who was not identified, the clerk, who was not identified, defense counsel, who was not identified, and Anderson.

On November 4, 2002, nearly four weeks after the District Court proceeding, the State obtained an indictment based on

---

The entire proceeding, which encompassed both charges, could not have taken more than five minutes, for it consumed less than four pages of transcript. The transcript shows that the clerk called the case and immediately read into the record a statement of facts relating to the possession of heroin charge that consumes less than a half-page (eleven lines) of transcript. Defense counsel indicated that he/she had no additions to the clerk's statement, whereupon the court immediately found, from the "facts as agreed as read into the record," that the evidence sufficed to support a verdict of guilty beyond a reasonable doubt and thus entered a verdict of guilty. That process was then repeated, in equally summary fashion, with respect to the cocaine charge.

Although the docket shows that, at some point, Anderson entered a plea of not guilty, when and how that was done is not clear from the record. No plea was entered or confirmed at the "trial." The court, when indicating its intent to impose a sentence of incarceration, asked Anderson, who begged not to be incarcerated, if he wanted to continue with his "guilty plea" or withdraw it. When Anderson responded that he wanted to continue, the court said that it had "agreed" to a sentence of nine months, which it then imposed. The court then immediately imposed a concurrent sentence of nine months with respect to the September 12 incident.

The judge's comments suggest that a bargain of some kind was negotiated and agreed to, although the record gives no indication of how, where, when, or under what circumstances such a bargain was struck, much less whether a prosecutor was even aware of such a bargain or participated in negotiating it.

After this Opinion was initially filed, we were informed, in a Motion for Reconsideration, supported by an affidavit of an Assistant State's Attorney in Baltimore City, that the transcript that the parties placed and allowed to remain in the record as the "Official Transcript" of what had occurred in the District Court, that they each relied upon in presenting their arguments, and that we relied upon in resolving the issues presented, was "incomplete," "inaccurate," and "deficient." That "Official Transcript," we are now told, failed to reflect that the State's Attorney was aware of the District Court charge, that a prosecutor participated in the District Court proceeding, and that it was, in fact, the prosecutor, and not the clerk, who read "the agreed statement of charges." Although that would explain an otherwise apparent and troubling lack of prosecutorial oversight, it does not explain why the State's Attorney and defense counsel allowed such a now-conceded "incomplete," "inaccurate," and "deficient" transcript of the critical proceeding to be placed in the record in the Circuit Court and thus to be offered to that Court as an accurate representation of what had occurred or why the Public Defender and the Attorney General permitted such a wholly misleading transcript to remain in the record on appeal, without comment, to have relied on the transcript in their arguments to this Court, and, thereby, to have represented it as genuine. We have no doubt that the derelictions on the part of counsel were inadvertent and not deliberate.

**128**

the sale to Detective Butler. The indictment charged Anderson with possession with intent to distribute heroin and with distribution of heroin to Butler. The date and place of those offenses were alleged to be October 1, 2002, at 1500 Myrtle Avenue. On November 12, the State obtained a second indictment, based on the sale to Detective Barnes. That indictment charged Anderson with possession of heroin, possession with intent to distribute heroin, and distribution of heroin to Detective Barnes. The date and place of those offenses were alleged to be October 1, 2002, at 1500 Myrtle Avenue.

Anderson moved to dismiss the two indictments on the ground of double jeopardy. He averred that the offenses charged in the indictments and that charged in the District Court case all arose at about the same time and place and involved the same cigarette pack, and he argued that his conviction in the District Court barred further prosecution. The court indicated that the argument may have had merit under the holding in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) but observed that the Supreme Court had later overruled that decision. *See United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The applicable test for double jeopardy purposes, the court found, remained that enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). To constitute double jeopardy under that test, the court declared, the multiple offenses must arise from incidents that occur at the same time and place, but it found that the charges embodied in the two indictments arose from incidents that occurred at a different time than the incident underlying the District Court charge. For that reason, the motion was denied.

Anderson filed an immediate appeal to the Court of Special Appeals. *See Bunting v. State*, 312 Md. 472, 477–78, 540 A.2d 805, 807–08 (1988) and cases cited there, recognizing the right under the collateral order doctrine to take an immediate appeal from the denial of a motion to dismiss a criminal charge on double jeopardy grounds. The intermediate appel-

late court, in an unreported opinion, agreed that, because all of the possession charges, in both the indictments and the Statement of Charges, "relate to the same quantity of CDS under appellant's control on the day of his arrest," double jeopardy barred the possession and possession with intent to distribute charges in the two indictments. Relying on *Hawkins v. State*, 77 Md.App. 338, 550 A.2d 416 (1988), however, the court held that the distribution charge arose from "separate acts unrelated to the possession offenses which resulted in appellant's arrest by Detective Clasing." It noted that the distribution offenses had already occurred prior to Clasing's observation of Anderson discarding the cigarette pack and that the District Court conviction therefore had no bearing on the earlier distributions. We granted *certiorari* to review that decision.

## DISCUSSION

As a contextual preface to our consideration of the double jeopardy issue, it is helpful to note that, subject to certain exceptions, the District Court has exclusive initial jurisdiction over a charge of simple possession of a controlled dangerous substance in violation of Maryland Code, § 5–601 of the Criminal Law Article (CL). *See* Maryland Code, §§ 4–301(b)(1) and 4–302(d)(2) of the Cts. & Jud. Proc. Article (CJP). One of the exceptions to that exclusive initial jurisdiction, provided for in CJP § 4–302(d)(2)(ii), is that the Circuit Court may try a charge of simple possession if the defendant "[i]s charged with another offense *arising out of the same circumstances* that is within a circuit court's jurisdiction." (Emphasis added).

Distribution of a controlled dangerous substance and possession with intent to distribute such a substance are felonies. *See* CL §§ 5–602 and 5–607(a). As such, and because they are not within the ambit of CJP § 4–302(a), those charges must originate and be tried in the Circuit Court. Thus, if a distribution or possession with intent charge arises from the "same circumstances" as a simple possession charge, the latter may be joined with the former and filed and tried in the Circuit Court. That has a significant utility, for at least two

reasons. First, even if one or more of the crimes charged is a lesser included offense of another, subject to any collateral reason for severance, all may be prosecuted together, and any double jeopardy problem that arises from multiple convictions may be resolved by merging the lesser and greater convictions and imposing sentence only on the greater offense. That allows the State to punish the defendant for the most serious crime.

Second, joinder in the Circuit Court avoids the prospect of the kind of double jeopardy problem that has arisen in this case. Subject to the authority granted to the State Prosecutor in title 9, subtitle 12 of the State Government Article, it is the statutory duty of the State's Attorney to "prosecute . . . on the part of the State, all cases in which the State may be interested." *See* Maryland Code, Art. 10, § 34; *also Babbitt v. State,* 294 Md. 134, 448 A.2d 930 (1982). Police officers, however, on their own and apparently without consulting the prosecutors in the State's Attorney's Office, are permitted to file criminal charges in the District Court. Maryland Rule 4–202(b) reflects that practice by permitting a Statement of Charges to be signed only by a peace officer or District Court Commissioner, rather than by a prosecutor. If left unknown to, or unattended by, the prosecutor, however, the District Court case can create coordination problems that can lead to the very situation now before us.

■ Both the Federal Constitution, through the Fifth and Fourteenth Amendments, and Maryland common law prohibit the State from placing a person twice in jeopardy for the same offense. That prohibition provides a dual protection—against prosecuting a person for an offense after that person has already been prosecuted for, and either convicted or acquitted of, the "same offense," and against imposing multiple punishments for the "same offense." *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Purnell v. State,* 375 Md. 678, 827 A.2d 68 (2003). With respect to both protections, the issue most often raised is whether the second

prosecution or additional punishment is, in fact, for the "same offense."

 That issue can arise in at least two contexts—where there are two or more separate statutes or common law provisions that embrace the same criminal conduct, and where a single statute may be read as creating multiple units of prosecution for search and conduct. Depending on the context, the issue can turn on whether (1) the two or more offenses charged, in fact, arise from the same incident or course of conduct and thus are the same in fact, or (2) if so, despite a facial distinction between the offenses, as defined in the statutes or by the common law, the relationship between them is such that they are the same in law for double jeopardy purposes. *See Jones v. State*, 357 Md. 141, 158, 742 A.2d 493, 502 (1999). Both questions—sameness in fact and sameness in law—are relevant here.

In *Blockburger v. United States, supra*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, the Supreme Court held that the standard to be used in resolving the sameness in law issue for purposes of the Constitutional prohibition was the "required evidence" test, and we have adopted and adhered to that standard as well in applying the common law prohibition. *See Newton v. State*, 280 Md. 260, 373 A.2d 262 (1977); *Purnell v. State, supra*, 375 Md. at 693, 827 A.2d at 77. In *Thomas v. State*, 277 Md. 257, 267, 353 A.2d 240, 246–47 (1976), we defined that test as follows:

"The required evidence test is that which is minimally necessary to secure a conviction for each ... offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy purposes even though arising from the same conduct of episode. But where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy purposes."

*See also Middleton v. State,* 318 Md. 749, 757–58, 569 A.2d 1276, 1279–80 (1990).

 That test focuses on the relationship between the offenses, rather than on whether the multiple offenses arise from the same conduct or incident; indeed, it assumes sameness in fact. *See Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. The question here, in that regard, is whether, under a *Blockburger* analysis, possession of a controlled substance is the "same offense" as possession with intent to distribute or actual distribution of the substance.

In *State v. Woodson,* 338 Md. 322, 329, 658 A.2d 272, 276 (1995), we reached the necessary conclusion that, because every element of the crime of possession is also an element of the crime of possession with intent to distribute and only the latter offense contains an element—intent to distribute—not contained in the former, the two offenses "are deemed the same offense for double jeopardy purposes." In *Hankins v. State,* 80 Md.App. 647, 565 A.2d 686 (1989), the Court of Special Appeals correctly concluded that the same result pertains with respect to possession and distribution.

Criminal Law Art. § 5–601(a)(1) makes it unlawful to possess a controlled dangerous substance. The word "possess" is defined in § 5–101(u) as to "exercise actual or constructive dominion or control over a thing by one or more persons." Section 5–602(1) makes it unlawful to distribute a controlled dangerous substance. The word "distribute," with respect to a controlled dangerous substance, is defined in § 5–101(*l* ) as "to deliver other than by dispensing." "Dispense" is defined in § 5–101(k) as to deliver "by or in accordance with the lawful order of an authorized provider" as defined in § 5–101(d). "Deliver" means "to make an actual, constructive, or attempted transfer or exchange from one person to another whether or not remuneration is paid or an agency relationship exists." § 5–101(h).

Putting these various definitions together, distribution occurs when a controlled dangerous substance is delivered, either actually or constructively, other than by lawful order of

an authorized provider. It is not possible, under these statutes, to "distribute" a controlled dangerous substance in violation of § 5–602 unless the distributor has actual or constructive possession (dominion or control) of the substance. Thus, possession of the substance distributed is necessarily an element of the distribution. The crime of distribution obviously contains an element not contained in the crime of possession— the distribution—but there is no element in the crime of possession not contained in the crime of distribution. Upon the same analysis used in *Woodson,* therefore, possession and distribution are the "same" offenses for double jeopardy purposes.

■ It follows, then, that possession of the heroin distributed to Detectives Barnes and Butler is a lesser included offense of the respective distributions to the detectives, as charged in the two indictments, and that it is therefore the "same offense" as the distribution for double jeopardy purposes. The sameness in law prong is clearly established. The issue thus becomes whether the possession offense charged in the District Court and the distribution offenses charged in the indictments arose as part of the same course of conduct—whether they are the same in fact. Anderson, of course, urges that they did arise from the same course of conduct—that the heroin that he possessed when arrested by Detective Clasing he also possessed when the capsules were sold to Detectives Butler and Barnes and, indeed, came from the same cigarette pack. The State looks at the matter differently. Relying on *Hawkins v. State,* 77 Md.App. 338, 550 A.2d 416 (1988), it asserts that, when arrested by Detective Clasing, Anderson no longer had possession of the capsules sold to the detectives, so the possession could not be the same. Possession of the four capsules sold to the detectives ended when the capsules were sold. When arrested by Clasing, he had only the 25 capsules. Anderson focuses on the situation at the moment of the first distribution; the State focuses on the situation at the time of Anderson's arrest.

*Hawkins* does, indeed, support the State's position. In that case, a police officer observed Hawkins remove some aluminum foil packets from a plastic bag, hand one to another individual, and accept money from that individual. She then alerted other officers and directed them to arrest Hawkins. As an officer approached, Hawkins fled. While running, he reached into his pocket and discarded the plastic bag containing the aluminum foil packets, which packets, it was later shown, contained marijuana and PCP. Hawkins was convicted of both possession and distribution, and the question arose whether he could be sentenced for both. Relying on a number of out-of-State cases, the Court of Special Appeals held that the multiple sentences could stand because the crimes "spawned from separate acts." That was so, the court held, because the distribution had been completed before the discard of the bag observed by the arresting officer.

There have been a number of cases in which this issue has been addressed. The cases arise from a wide variety of fact situations, and, not surprisingly, they reach different results. We start with the proposition that, absent a clear statutory direction to the contrary, the uninterrupted possession of an item of contraband is ordinarily regarded as one continuing offense under Maryland law. *See Duncan v. State,* 282 Md. 385, 389, 384 A.2d 456, 458–59 (1978) where, in *dicta,* we observed that "[w]hen mere possession of a prohibited article is a crime, the offense is a continuing one because the crime is committed each day the article remains in possession, as there is a continuing course of conduct." *See also Webb v. State,* 311 Md. 610, 536 A.2d 1161 (1988) where we applied that doctrine to the possession of a handgun and precluded separate convictions and sentences for the uninterrupted possession of the same handgun on two occasions three hours apart. The doctrine of continuing possession is both unremarkable and necessary; otherwise, what would the unit of prosecution be— each minute the item is possessed, each hour, each day?

We noted in *Webb,* however:

"It may be that were the wearing, carrying, or transporting of the handgun by Webb interrupted by some lawful posses-

sion of it ... a subsequent unlawful wearing, carrying, or transporting of it would constitute another violation of the statute. And it may be that had Webb removed the weapon from his actual or constructive possession, it would be a separate violation when he retrieved it and wore it again on his person. And it may be that if it was shown that the handgun involved in the first incident was a different weapon from that involved in the second incident, there would be two violations."

*Id.* at 618, 536 A.2d at 1165.

These hypotheses illustrate that, when the possession that underlies the first incident ends before the second incident—when the possession is interrupted in some way and is not continuous—multiple offenses, separately punishable, may arise. That is one aspect of the problem, and happens to be the one now before us. Another, which may coexist with the first, is where the defendant possesses two or more quantities of a contraband drug that are kept in different places. Although that aspect is not before us, the underlying question is the same in both situations—whether the possession that underlies one offense is the same possession that underlies the other—and much of the discussion of the double jeopardy issue has been in that second context. The fact patterns vary, and it is not easy to compartmentalize the decisions. The common thread, if there is one, is to consider if there is a commonality of time, location, and purpose: was the contraband that formed the basis of the two offenses possessed at the same time, in the same location, and for essentially the same purpose? If so, courts have found the two offenses to be the same.

The easier cases are where the defendant simultaneously possesses small amounts of contraband in nearby places for personal use. In that situation, where there is a commonality of time, location, *and* purpose, courts have concluded that there is but one possession and therefore but one offense. *See State v. Adel,* 136 Wash.2d 629, 965 P.2d 1072 (1998) (en banc), where a minute amount of marijuana was found in the defendant's store and another minute amount in his car that was

parked just outside the store, and he was convicted on two counts of possession. Noting that the statute was silent as to the unit of prosecution in that situation, the Washington court applied the rule of lenity. In doing so, it observed that, under the State's theory, a defendant could be convicted and sentenced three times if marijuana was found in his sock, his pocket, and his purse, and it declined to permit that "slippery slope of prosecutorial discretion to multiply charges." *Id.* at 1075. *See also United States v. Wallis*, 1 M.J. 975 (N.C.M.R. 1976) (possession of unlit marijuana cigarette by sailor while on flight deck and possession of small amount of marijuana in his locker discovered fifteen minutes later constituted one offense); *United States v. Hughes*, 1 M.J. 346 (C.M.A.1976).

The courts have reached different results where there is not a commonality in all three respects. In *Potts v. State*, 300 Md. 567, 479 A.2d 1335 (1984), the police found in Potts's house, while executing a search warrant, two quantities of marijuana—one consisting of 40 bags of the drug located in a plastic shopping bag and the other consisting of three bags found in a cigar box. The Court regarded the latter as a personal supply. Potts was convicted of possession with intent to distribute and sentenced to two years imprisonment based on the first stash and simple possession, with a concurrent two month sentence based on the second, and he complained that, under double jeopardy principles, the convictions had to be merged. This Court disagreed, apparently because the two stashes were being held for different purposes. *Compare Rashad v. Burt*, 108 F.3d 677 (6th Cir.1997) where the court held that a defendant who had been convicted of possession based on a stash of 650 grams of cocaine found in his house, could not be later prosecuted for possession with intent to distribute 4,850 grams of cocaine found in his car, parked just outside his house.

In *In re Davis*, 142 Wash.2d 165, 12 P.3d 603 (2000), the court sustained separate convictions and sentences for possession with intent to manufacture or distribute based on evidence that the defendant operated two distinct marijuana growing operations at different locations—same time, same

purpose, different location. *See* also *United States v. Blakeney,* 753 F.2d 152 (D.C.Cir.1985), where the court sustained separate convictions and sentences based on possession of nearly five pounds of marijuana found in defendant's home and seven envelopes of marijuana found in his possession when he was subsequently arrested at his place of employment, several miles away. The court stressed not only the difference in location but also in purpose—to distribute the marijuana possessed at work to co-workers at the place of employment and to reserve the stash at home for other distributions.

Some of the cases are hard to pigeonhole under this approach, in that they either stretch or sharply circumscribe notions of commonality as to time, location, or purpose. In *State v. Stevens,* 123 Wis.2d 303, 367 N.W.2d 788, *cert. denied,* 474 U.S. 852, 106 S.Ct. 151, 88 L.Ed.2d 125 (1985), the court upheld convictions for possession with intent to distribute based on a stash of cocaine and marijuana found and seized during a search of the defendant's home on December 29 and separate convictions for simple possession of cocaine and marijuana based on quantities found in a shoulder bag in the defendant's car the next day, as he was returning home from vacation. Though acknowledging that possession and possession with intent to deliver are the same in law, the court viewed the offenses as different in fact if they "are either separated in time or are significantly different in nature." 367 N.W.2d at 798. It noted that the defendant's possession of the drugs in his house had been terminated by the seizure of those drugs on December 29, but that his possession of the drugs in the shoulder bag continued the next day. There was thus, in the court's view, no commonality as to time.

A similar result, based on slightly different facts, was reached in *United States v. Ray,* 731 F.2d 1361 (9th Cir.1984). Although the opinion is skimpy in reciting the underlying facts, it appears that one count in an indictment alleged distribution of a quantity of cocaine on December 7, and another alleged possession with intent to distribute a remaining quantity of cocaine on December 8. The court affirmed

separate convictions for the two offenses on the ground, tersely stated, that "[t]he cocaine at issue in count 28 cannot be the same cocaine that is at issue in count 27, since the count 27 cocaine had already been distributed by December 8." *Id.* at 1368.

In *United States v. Carter*, 576 F.2d 1061 (3rd Cir.1978), Carter carried 19 one-ounce packages of heroin from Los Angeles to Newark, where he delivered them all to Gorsuch at the same time. Gorsuch separated the heroin into two stashes—one, containing 677 grams, was for a pre-arranged resale the following day; the other, containing 95 grams, he retained for future resale to others. Gorsuch followed through with the pre-arranged sale, to undercover Federal agents, whereupon Carter, as a co-conspirator, was charged with separate counts of possession with intent to distribute the 95 grams and distribution of the 677 grams, and he complained that the indictment was multiplicitous—that it charged the same offense in separate counts.

Carter first argued that he had made only one distribution, of the entire amount to Gorsuch, and that he was not liable for Gorsuch's subsequent conduct. The court rejected that argument on the basis that, as a co-conspirator, Carter could be convicted of the two substantive offenses committed by Gorsuch. As to the complaint of multiplicity, the court held that Congress intended that "two distinct offenses, punishable by separate sentences, should be seen to arise when the evidence shows that the acts of possession and distribution involved discrete quantities of narcotics, and thus that the facts required to prove the two offenses differ." *Id.* at 1064. Because Gorsuch retained the 95 grams for further distribution after the sale of the 677 grams, the court held that the possession and distribution counts were distinct: the heroin that was distributed was different from the heroin retained for future sale. The holding articulated by the court was:

> "When an individual possesses an amount of heroin that could result in a future distribution, and when the same individual also distributes *another quantity* of heroin, he is punishable for both possession and for distribution."

*Id.* at 1064 (Emphasis added). The *Carter* court thus regarded the separation of the stash as being for different purposes and therefore as creating two separate possessions, only one of which was involved in the distribution.

That approach was also used in *State v. McFadden,* 63 Wash.App. 441, 820 P.2d 53 (1991), *review denied,* 119 Wash.2d 1002, 832 P.2d 487 (1992) where the defendant was charged with two counts of possession of cocaine—one arising from 84 grams found in his van and the other from his bringing 5.5 grams into an apartment for the purpose of selling it. The court sustained the two charges on the ground that the two stashes were in different locations. An intermediate appellate court in Georgia took the same position in *Camp v. State,* 181 Ga.App. 714, 353 S.E.2d 832 (1987). The defendant had a large stash of marijuana, from which she took a small amount that she sold. Upholding separate sentences for possession with intent to distribute and for the distribution, the court concluded that "[i]nasmuch as the sale of marijuana was not directly related to nor did possession of the quantity sold constitute the basis for the count of possession of the remainder of the marijuana, the separate conviction and punishment did not constitute double jeopardy." *Id.* at 835.

The efficacy of applying a strict time, location, and purpose approach to street dealers such as Anderson depends on how we view those criteria, particularly that of time. Anderson began his working day with a certain quantity of drugs that he kept in the cigarette pack. He apparently remained in the same location near 1500 Myrtle Avenue throughout the day (or at least between 1:55 and 2:30 p.m.) distributing the drugs from that location and from that cigarette pack. There is no evidence that he was resupplied between the time he sold two capsules to Detective Barnes and the time he was arrested by Detective Clasing. There was, therefore, clearly a commonality as to location and purpose. The question is whether, for double jeopardy purposes, there was a continuity of time. Do we view the time element from the moment he started business, from the point at which he made each distribution, or from the point at which he was arrested?

*Hawkins* and *Ray* viewed the time element from the point of arrest: at that point, under that view, Anderson no longer had in his possession the drugs that previously had been distributed, so there was no commonality as to time. Because he did not then possess the drugs that he had sold to the detectives, his possession of what was left could have no bearing on, or significance with respect to, the distributions.

That view, we think, may work in some situations, but does not work here, principally because of the charge actually made against Anderson in the District Court. Although the Statement of Probable Cause attached to the Statement of Charges notes that the cigarette pack, when recovered by Detective Clasing, contained 25 gel-caps of suspected heroin, the Statement of Charges itself charged Anderson generally with possession of heroin in violation of CL § 5–601 on October 1, 2002 at 1500 Myrtle Avenue. It did not specify a time and did not specify how much heroin Anderson possessed. In a full prosecution of that offense, Anderson could have been convicted based on whatever he had in his possession that day at that place, including the drugs sold to detectives Barnes and Butler or, indeed, to anyone else.

■ In determining the scope of the former conviction, the court must ordinarily look at the effective charging document upon which judgment was entered, not just the evidence presented in support of that charge. We have often made clear that the primary purpose of a charging document is to inform the defendant of the accusation against him/her by so describing the crime "as to inform the accused of the specific conduct with which he is charged," *Jones v. State*, 303 Md. 323, 336, 493 A.2d 1062, 1069 (1985), in order, among other things, to "protect[ ] the accused from a future prosecution for the same offense." *Williams v. State*, 302 Md. 787, 791, 490 A.2d 1277, 1279 (1985). *See also State v. Morton*, 295 Md. 487, 490–91, 456 A.2d 909, 911 (1983) and cases cited there.

One may never know, unless a transcript is prepared, what evidence was presented, and one could never be certain in any event what evidence a trier of fact (or the court on motion)

credited in reaching its verdict. The Supreme Court, for Constitutional purposes, and we, as a matter of common law, have rejected an "actual evidence" test to determine sameness in law, and we see no profit, absent special circumstances not present here, in adopting that test to determine sameness in fact. In most cases, the only sensible and workable criterion for determining the nature and scope of the prior offense is the effective charging document. That states the offense for which the defendant was tried.

Because the Statement of Charges filed in the District Court encompassed all of the heroin that Anderson possessed on October 1, 2002, at 1500 Myrtle Avenue, it necessarily included the heroin that he sold to Detectives Barnes and Butler. Having been convicted of that offense, he cannot later be prosecuted for crimes that, in law, constitute the same offense. The motion to dismiss the two indictments should have been granted.[2]

**JUDGMENT OF COURT OF SPECIAL APPEALS RE-VERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT OF CIR-CUIT COURT FOR BALTIMORE CITY AND TO RE-MAND TO CIRCUIT COURT WITH INSTRUCTIONS TO DISMISS INDICTMENT NOS. 102316072 AND 102308025; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY MAYOR AND CITY COUN-CIL OF BALTIMORE.**

---

**2.** We need not consider here whether a different result would be warranted had the Statement of Charges specified and charged only the possession of the 25 capsules at 2:30 p.m.